ALBERT LEWIS STOEHR AND CORWIN KARR STOEHR
v. STATE OF INDIANA.

[No. 374S62. Filed May 29, 1975.]

*Charles A. Thompson, Henderson, Daily & Foxworthy,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellants were jointly charged by affidavits with violations of Ind. Code § 35-13-4-6, Burns § 10-4101, inflicting injury during the commission of robbery, and Ind. Code § 35-12-1-1, Burns § 10-4709, commission of a felony while armed, in connection with the robbery of a gasoline station and the wounding of the attendant. Appellants were jointly tried by jury. The jury acquitted appellants on the charge of inflicting injury during the commission of robbery. The jury found appellant Corwin Karr Stoehr (hereinafter Corwin) guilty of commission of a felony while armed. The jury found appellant Albert Lewis Stoehr (hereinafter Albert) guilty of robbery. Appellants were sentenced to imprisonment for twenty-five years. Appellants timely filed their motion to

correct errors, which was overruled, resulting in this consolidated appeal.

## I. Contentions in Common

Appellants assert that they were denied effective assistance of counsel because of their joint representation when their interests conflicted. When the possibility of inconsistent interests is brought to the court's attention at the outset of the trial, reversal is required if the trial court requires the defendant to share the services of his attorney with another co-defendant. *Glasser* v. *U.S.,* (1941) 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed 680. At no point before or during the trial did appellants object to being jointly represented by the attorney whom they had employed. When such claim is first advanced in a motion to correct errors, the movant must show that prejudice resulted to him. *U.S.* v. *Lovano,* (1970, 2d Cir.) 420 F. 2d 769, 773, *cert. denied,* 397 U.S. 1071. Appellants rely upon the maverick decision of *Campbell* v. *U.S.,* (1965, D.C. Cir) 352 F. 2d 359, 360, which states:

> "When two or more defendants are represented by a single counsel, the District Court has a duty to ascertain whether each defendant has an awareness of the potential risks of that course and nevertheless has knowingly chosen it."

An analysis of *Campbell* which appears in *U.S.* v. *Rispo,* (1972, 3d Cir.) 460 F. 2d 965, 971-72 is enlightening:

> "In *Campbell,* the court was presented with a record which clearly demonstrated prejudice to one of the jointly represented defendants. Although the language in the opinion suggests that the duty of the trial judge to ascertain whether each defendant knows of the risk of joint representation is absolute, the decision itself was made to rest on a definite finding of prejudice to one of the defendants by virtue of his shared representation. While so finding, it is worthy of note that the court in *Campbell* refused to reverse the conviction of the remaining defendant where there was no indication that his defense suffered from

sharing an attorney with his co-defendant, although the trial court had not fulfilled its duty to inquire."

In *Campbell* the co-defendant whose conviction was reversed (Glenmore) was "substantially prejudiced" because defense counsel admittedly "made all comments with reference to the Defendant Campbell," 352 F. 2d 361, against whom the evidence was strong, and neglected Glenmore, against whom the evidence was weak. In this case, we have a somewhat inverse situation. Here there was positive eyewitness indentification of Corwin as a principal in the robbery, but no one could identify Albert as an accomplice. Thus, Albert was in the same position as Glenmore in *Campbell*. But there the similarity ends, for defense counsel vigorously protected the interests of Albert by requiring witnesses who carelessly used the word "they" in their testimony to state that the reference was to Corwin and one Butler. Hence, there is no prejudice shown as to Albert. But Corwin asserts that the efforts of defense counsel in pointing up the weakness of the case against Albert necessarily prejudiced Corwin by tending to emphasize the strength of the case against him. Corwin's contention is clearly one of locking the barn door after the horse is gone. Undoubtedly some prejudice resulted to Corwin by the strategy employed by defense counsel, but that prejudice was not substantial, *see Campbell, supra,* in view of his positive identification by the station attendant.

Appellants assert that they were denied effective assistance of counsel, because of the failure of the trial court to grant a continuance. The relevant criteria for review of a claimed infringement of due process rights owing to the denial of a continuance are set forth in *Ungar* v. *Sarafite,* (1964) 376 U.S. 575, 589-90, 84 S. Ct. 841, 849-50, 11 L. Ed. 2d 921, 931, *reh. denied* 377 U.S. 925, 84 S. Ct. 1218, 12 L. Ed. 2d 217:

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if

the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444, 84 L. Ed. 377, 60 S. Ct. 321. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v. Fretag, 348 U.S. 3, 99 L. Ed. 4, 75 S. Ct. 1. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva v. United States, 352 U.S. 385, 1 L. Ed. 2d 415, 77 S. Ct. 431; Torres v. United States, 270 F. 2d 252 (CA 9th Cir.); cf. United States v. Arlen, 252 F. 2d 491 (CA2d Cir.)."

Appellants, with counsel present, pleaded not guilty at arraignment on November 7, 1973, and requested a speedy trial. Trial was set for November 26. On November 15, defense counsel went to see the judge about obtaining a continuance, but the judge was not in. Counsel returned to his office and dictated a motion for continuance which was not mailed until November 21. With the Thanksgiving holiday intervening, the motion reached the trial court at 9:30 a.m. on the morning of the trial. Jury selection was scheduled to begin at 10:00 a.m., but defense counsel did not appear. The trial court issued a writ of body attachment for defense counsel, who finally arrived about 1:00 p.m. Counsel then renewed his motion for a continuance, asserting that he had not subpoenaed certain witnesses, although admitting that he had had the opportunity to do so, and that he had not conducted certain pre-trial discovery which his clients had requested. While the trial court was eager to learn of any legitimate ground to warrant a last-minute continuance, defense counsel was evasive:

THE COURT: "* * * If you could give me some lead Sam as to exactly what it is you wanted to do and what is lacking? What witnesses you need? You said there was a doctor?"

MR. SAMUEL KAGAN: "Your honor, I received a letter from my client. I don't have the envelope, but it was re-

ceived by me very recently. Wherein, he asked me to file for certain information, seven, seven distinct things. This case ——"

THE COURT: (Interposing) "Would you read them? Seven distinct ——"

MR. SAMUEL KAGAN: (Interposing) "I would rather not at this time. May I ——may I ——"

THE COURT: "Are they secret?"

MR. SAMUEL KAGAN: "No, uh ——"

THE COURT: (Interposing) "We will have the Prosecutor step out of the Courtroom."

MR. SAMUEL KAGAN: "No, I would rather —"

Defense counsel's inability to articulate any just reason for delay demonstrates the propriety of the trial court's denial of the motion for continuance, and we find no abuse of discretion on the facts of this case.

Appellants insist that the denial of a continuance prevented them from conducting pre-trial discovery. They focus upon the following statement of the trial court as an indication that the trial court acted improperly in denying them a continuance:

"You say you want to conduct some discovery. I know of no procedure in discovery in criminal procedure in Indiana, other than the list of witnesses."

Appellants point out that witness lists are not the exclusive form of discovery available to the criminal defendant. The record, however, indicates that the trial court was aware of the broad nature of criminal discovery, or was at least willing to be instructed:

"At the moment I can't think of any other discovery available to the defendant, other than the admonition to the Judge to see that it is a fair trial. Now what is it that you wanted to discover? Maybe we can assist you here. Did you just want a fishing expedition? Discovery is a broad procedure, proposition."

Defense counsel was unable to present the court with any insight as to the compelling nature of the desired discovery which would mandate the granting of a continuance. There was no abuse of discretion in denying appellant's motion for continuance.

Appellants assert they were denied a fair trial and effective assistance of counsel, because of the intimidating effect upon counsel of his arrest on the morning of trial. Appellants correctly suggest that the action by the trial court in issuing a writ of body attachment was an extreme method for obtaining counsel's presence at trial, particularly in view of a record which shows no exhaustion of less obtrusive means (i.e., a telephone call) of securing counsel's attendance. While we do not believe sending the sheriff out to fetch errant attorneys is a practice to be commended, neither do we believe counsel was so humiliated or cowed thereby as to be unable to defend appellants' interests effectively. The record contains no exchange between the court and counsel, after counsel's arrival, which would indicate that the court sought to punish or belittle counsel for failing to appear on time. While counsel was somewhat meek in arguing for a continuance prior to trial, he was aggressive at trial. His objections were timely and often sustained. Appellants received effective representation and were not denied a fair trial. See *Dixon* v. *State*, (1972) 154 Ind. App. 603, 290 N.E.2d 731.

Appellants next assert that they were denied appellate review of their sentences under Article 7, section 4, of the Indiana Constitution, because the trial court failed to comply with Ind. R. Crim. P. 11, which requires a verbatim transcript of the sentencing hearing. Nor without such record is it possible to determine whether the trial court received and considered a pre-sentence report, as required by Ind. Code § 35-4.1-4-9, Burns § 9-2251, prior to sentencing the appellants. The main thrust of Ind. R. Crim. P. 11 is to insure speedy sentencing of a defendant and to

advise him of his right to appeal. Appellants have now exercised the very rights of which they were to have been advised by the trial court and cannot be heard to complain that a record was not kept of such proceedings. In regard to the claimed infringement of the right of appellate review under the Indiana Constitution, we recently noted that procedural guidelines for the routine exercise of this power have not yet been formulated. As stated in *Beard* v. *State,* (1975) 262 Ind. 643, 323 N.E.2d 216, 219:

> "The judicial article of our Constitution was amended in 1970 by an express grant of the power to review and revise the sentence imposed. The grant appears to go beyond our inherent power to review and revise those sentences that exceed constitutional limitations, a responsibility that we have previously recognized. Dembowski v. State (1968), 251 Ind. 250, 240 N.E.2d 815; Hobbs v. State (1969), 253 Ind. 195, 252 N.E.2d 498; Landaw v. State (1972), [258] Ind. [67], 279 N.E.2d 230. Thus far, we have refrained from exercising this recently granted power and believe that it can be properly exercised only under a program of policies and procedures not yet established. We, therefore, decline the defendant's prayer for a review of his sentence."

Our conclusion in *Beard* governs the denial of appellants' prayer for review of their sentences here.

Finally, appellants maintain that they were not given credit against their sentences for days spent in confinement prior to sentencing, as required by Ind. Code, § 35-8-2.5-1, Burns, § 9-1828. The state concedes that appellants may be due credit, but urges that appellants should obtain such relief via a petition for post-conviction relief under Ind. R. P.C. 1. Since the matter is now before us, we remand to the trial court with instructions to determine whether appellants are entitled to such credit and, if so entitled, to grant them the appropriate credit.

## II. Contentions of Albert Lewis Stoehr

Albert Lewis Stoehr challenges the sufficiency of the evidence upon which his conviction is based. For the same

reason, Albert objects to the giving of the court's final instruction No. 15 which reads:

"A fundamental principal of law is that when two or more confederates engaged in the commission of an unlawful act, one is liable for the acts of the other in furtherance of the unlawful common objective.

"This concept is further explained that a person engaged in the commission of an unlawful act is criminally liable for any probable and natural consequences, including everything done by confederates, which follows in the execution of a common design, even though not intended as part of the original design."

While Albert was charged as a principal, he was prosecuted as an accessory under Ind. Code § 35-1-29-1, Burns § 9-102. In addition to instruction No. 15, on confederacy, the jury was given instruction No. 16 on accessoryship. The instruction reads:

"You are instructed that at the time of the commission of the alleged offenses in this trial there existed a statute known as Indiana Annotated Statutes 9-102 which read in part as follows:

"Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command or otherwise procure a felony to be committed, may be charged . . . tried and convicted in the same manner as if he were a principal . . ."

The facts most favorable to the state which support the jury's verdict that Albert aided and abetted in the commission of a felony are as follow. On the evening of the robbery three men drove into the gasoline station in a two-tone green Oldsmobile. Two of the men robbed the station attendant while the third man remained in the vehicle. The jury heard testimony from which it could conclude that the driver of the vehicle observed the robbery as it took place. The station attendant was the only witness to the robbery and he was unable to identify Albert positively as the person remaining in the auto. As soon as the bandits

fled, the attendant called the sheriff. When the sheriff arrived, the attendant gave him a detailed description of the two men who had robbed him, and a general description of the vehicle and the third person. The broadcast of this description was monitored by state police officers in Zionsville who proceeded to S.R. 421 to keep a lookout for the vehicle. When they spotted the vehicle traveling south on S.R. 421 at a high rate of speed, they turned and gave pursuit. As the police began to close in on the vehicle, its rate of speed diminished, and two of the three occupants ducked down. When the vehicle stopped, Albert was at the wheel. Albert immediately got out of the vehicle, without being asked to do so. At first he was agreeable, but soon became argumentative, wanting to know why he was being detained. A search under the front seat disclosed a money pouch taken from the station and containing a check written by the station attendant. A gun and some ammunition were also recovered from the auto. The foregoing evidence is sufficient to sustain the jury's verdict that Albert aided in the commission of the robbery by driving the get-away car. *See Coach* v. *State,* (1968) 250 Ind. 226, 235 N.E.2d 494. We therefore reject appellant's contention that the evidence suggests that he was merely an unwitting companion of a perpetrator. It follows that instruction No. 15 was germane to the facts presented in this case and was properly given. *See Bays* v. *State,* (1959) 240 Ind. 37, 159 N.E.2d 393.

In view of our conclusion as to the sufficiency of the evidence to sustain Albert's conviction, it is unnecessary to consider his contention that the constitutional prohibitions against double jeopardy prevent the retrial of a defendant who wins reversal of his conviction on grounds of insufficient evidence.

### III. Conclusion

This cause is remanded to the trial court with instructions to determine the credit due appellants, if any, pursuant to Ind. Code § 35-8-2.5-1, Burns § 9-1828. In all other respects,

for all the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

Givan, C.J., DeBruler and Prentice, JJ., concur.

Arterburn, J., not participating.

NOTE.—Reported at 328 N.E.2d 422.