CRAIG ALLEN WALKER v. STATE OF INDIANA.

[No. 3-974A163. Filed October 20, 1975.]

*James E. Burke,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Harry John Watson, III,* Deputy Attorney General, for appellee.

STATON, P.J.—Craig Allen Walker's appeal from convictions of first degree burglary[1] and auto banditry[2] presents two issues for review:

(1) Did the trial court err in denying Walker's motion for a continuance?

---

1. IC 1971, 35-13-4-4, Ind. Ann. Stat. § 10-701 (Burns, 1956).
2. IC 1971, 35-12-2-1, Ind. Ann. Stat. § 10-4710 (Burns Supp. 1974).

(2) Is the evidence sufficient to sustain the conviction of first degree burglary?

We affirm.

The facts of this case viewed most favorably to the State are as follows. At about 10:30 a.m. on December 6, 1973, Robert Manford observed a young male walk down the alley and later, up to the back door of neighbor Robert Hammond's home at 121 North St. Louis Boulevard in South Bend, Indiana. The young man then walked around the house and out to the street. A few minutes later, Manford observed another man walking down the alley looking at the Hammond house. A short time later, he saw these two men drive down the alley and stop directly in front of the back door to the Hammond home. Robert Manford called police and reported what he had seen. After the call, he saw the same two men coming down Hammond's back steps carrying a television set. As he observed the two men carrying the television and trying to get it into the parked car, Manford took three photographs of them. Police arrived as the two men were trying to put the television into the parked car. One of the two men, Walker, started to run but stopped upon a police command to halt. Walker's hand was bleeding. A blood-stained rag had been found in the alley. A rear window of the Hammond home was broken, and blood stains were found on napkins in the kitchen. Hammond identified the television Walker was trying to put in the car as belonging to him and as having been in the house when he left shortly before ten o'clock that morning.

## I.

### Continuance

At trial, Walker made an oral motion for a continuance for the purpose of obtaining impeachment evidence. On ap-

peal, Walker contends that the denial of his motion for a continuance deprived him of a fair trial. When reviewing an alleged infringement of the right to fair trial because of the denial of a continuance, this Court's review is for abuse of discretion. As the Supreme Court of Indiana recently stated in *Stoehr* v. *State* (1975), 263 Ind. 208, 328 N.E.2d 422, 425-6:

"... The relevant criteria or review of a claimed infringement of due process rights owing to the denial of a continuance are set forth in Ungar v. Sarafite (1964), 376 U.S. 575, 589-90, 84 S.Ct. 841, 849-50, 11 L.Ed.2d 921, 931, reh. denied 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217:

'The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. ... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; Torres v. United States, 270 F.2d 252 (CA 9th Cir); cf United States v. Arlen, 252 F.2d 491 (CA 2d Cir)'."

Before this Court will find that there has been an abuse of discretion, the appellant must show that he was prejudiced by the failure of the trial court to grant the continuance. *White* v. *State* (1975), 263 Ind. 302, 330 N.E.2d 84; *King* v. *State* (1973), 260 Ind. 422, 296 N.E.2d 113.

On the day of trial, Walker learned that the State intended to introduce into evidence the three photographs taken by Manford. Walker sought the continuance to obtain a transcript of Manford's testimony at Walker's juvenile court waiver hearing or the presence at trial of the attorney representing Walker at that hearing. Walker asserted that at the waiver hearing, Manford testified under oath that the photo-

graphs did not turn out and that the continuance was necessary to obtain evidence of this prior inconsistent statement for impeachment purposes. At trial, Manford identified the three pictures he took during the burglary and they were introduced into evidence by the State. During Walker's cross-examination of Manford, the following exchange occurred:

"Q. Do you recall giving testimony in a juvenile hearing regarding Craig Walker?

"A. Yes.

"Q. Were you under oath at that time?

"A. Yes.

"Q. Do you recall who the attorney was who represented Craig Walker?

"A. No I don't recall his name.

"Q. If I mentioned the name Charles Crutchfield?

"A. That seems to ring a bell. He was a small-like man.

"Q. Do you recall Mr. Crutchfield asking you questions about the photographs you took on December 6?

"A. I don't know if he asked me any or not. I don't remember if he asked me any. But someone did ask questions about photographs but I don't know if he asked them.

"Q. Do you recall making the statement in Court that day that the photographs did not turn out and were unavailable?

"A. Well I was told by someone that the photographs, that they didn't turn out. They weren't processed or something and didn't turn out and I didn't push it."

During redirect examination by the State, Manford further explained his prior testimony at the juvenile waiver hearing:

"Q. Mr. Manford what did you do with this film after you took the pictures?

"A. It was still in the camera and as I say I saw the news photographer there and teased him a little bit about

how he would like to have pictures of it and he grabbed me by the arm and introduced me to the chief there and the chief asked me if I would give him the films and I said yes if it will help you.

"Q. Did you give the cartridge of film to some individual of the policement department that day?

"A. He took it out of the camera right there and wrote me a receipt for the film and dated it.

"Q. Have you seen that film since that day?

"A. The film?

"Q. Yes or any development?

"A. I saw the pictures introduced in evidence here today.

"Q. Is that the first time you have seen them?

"A. Yes."

Before Walker would be entitled to impeach Manford's testimony by extrinsic evidence of a prior inconsistent statement, it was necessary for Walker to lay a proper foundation and for Manford to deny making the prior inconsistent statement. *Aikins* v. *State* (1971), 256 Ind. 671, 271 N.E.2d 418; *Cox* v. *State* (1934), 206 Ind. 550, 190 N.E. 427. Once the witness unequivocally admits that he made the inconsistent statement, he has impeached himself and further evidence that he made the inconsistent statement is unnecessary for impeachment purposes.[3] In this case Manford did not deny making the prior inconsistent statement and he further explained on redirect examination that he did not, of his own knowledge, know whether the pictures turned out until the day of trial. Although Manford's answer to Walker's question regarding whether Manford did,

---

3. Indiana follows the prevailing view that once the witness admits making the allegedly inconsistent statement, the impeacher may not prove the admitted inconsistent statement by another witness. However, there are jurisdictions allowing further proof of the admitted inconsistent statement. See McCORMICK, EVIDENCE § 37 (2nd ed. 1972).

in fact, make the prior inconsistent statement was not entirely responsive, as this Court stated in *Farm Bureau Mutual Ins. Co.* v. *Seal* (1962), 134 Ind. App. 269, 286, 179 N.E.2d 760, 767:

> ". . . Failure to get a denial or answer . . . that [the witness] . . . did not recall the statement was a failure to lay a proper foundation. Without a proper foundation the statement was not admissible for impeachment purposes. . . ."

The trial court could have properly excluded any extrinsic evidence offered to show the prior inconsistent statement by Manford. Walker has not demonstrated how he was prejudiced by failure of the trial court to grant his motion for continuance to obtain this extrinsic evidence of Manford's prior inconsistent statement. The trial court did not abuse its discretion in denying Walker's motion for continuance.

## II.

### Sufficiency of the Evidence

Walker contends the evidence is insufficient to sustain his conviction of first degree burglary because it does not establish beyond a reasonable doubt that he entered the Hammond home or that he had the necessary intent to commit a felony. The facts of this case are almost identical to those presented in *Walton* v. *State* (1973), 157 Ind. App. 154, 299 N.E.2d 231. In both cases, there was evidence that:

1. the police received a report of a suspected burglary in progress;
2. in investigating the report, the police discovered the appellant outside the house carrying a television;
3. a window of the house had been broken;
4. blood was found inside the house; and the appellant had a fresh bleeding cut on his hand.

In *Walton, supra,* we held the circumstantial evidence sufficient to sustain the conviction of first degree burglary, and we reach the same conclusion here.

The judgment of the trial court is affirmed.

Hoffman, J. and Garrard, J., concur.

NOTE.—Reported at 335 N.E.2d 834.