AUBREY DALE PARKER *v.* STATE OF INDIANA.

[No. 476S110.  Filed December 14, 1976.]

*John J. Halcarz, Jr.,* of Hammond, for appellant.

*Theodore L. Sendak,* Attorney General, *Daniel Lee Pflum,* Deputy Attorney General, for appellee.

DeBruler, J.—Appellant appeals convictions of kidnapping, Ind. Code § 35-1-55-1 (Burns 1975), and rape, Ind. Code § 35-13-4-3 (Burns 1975). Appellant was charged jointly with one Osby Parker in an information filed August 13, 1975, after the Lake County Juvenile Court had waived jurisdiction over appellant. A jury found appellant guilty as charged on December 11, 1975. Appellant received sentences of life imprisonment for kidnapping and twenty years determinate imprisonment for rape.

On appeal appellant raises three[1] issues:

(1) whether the trial court erred in overruling appellant's motion to suppress the in-court identification of appellant by the victim;

(2) whether the verdict of guilty of kidnapping was supported by insufficient evidence or contrary to law; and whether

---

1. In his brief and motion to correct errors, appellant treats the denial of his motion for a directed verdict and the sufficiency of the evidence as separate issues. We consider both questions, but simply consolidate them because of their similarity.

the trial court erred in overruling appellant's motion for a directed verdict as to that count;

(3) whether appellant has been subjected to cruel and unusual punishment in his conviction for kidnapping and sentence of life imprisonment therefor.

Shortly after midnight on June 15, 1975, the victim, and her boyfriend, were walking to the victim's home from a wedding reception in Gary. An automobile pulled up beside them and the driver offered them a ride. Since it was raining, the victim's boyfriend accepted. The victim entered the automobile, a two-door maroon and white Ford L.T.D. When her boyfriend attempted to follow, the driver pushed the door into him, closed it, and sped off.

Besides the driver there was one passenger in the front seat; the victim was in the back. The driver and passenger, both men, whispered together as the automobile drove away. The victim several times asked to be released, but neither man answered.

The car stopped at a Shell service station, and the driver got out. The passenger locked both doors and remained in the automobile with the victim. The driver returned and drove to another Shell station, while he again opened his door. The victim attempted to flee the car through the driver's door, but he wrestled her back inside.

The driver proceeded to the Tri-State Expressway, where he parked on an entrance ramp. The driver climbed into the back seat where he raped and sodomized[2] the victim. During the rape he asked the passenger to hand him a gun, then told the victim that he was holding a gun to her neck.

When the driver was finished the passenger also raped and sodomized the victim. The passenger remained in the back seat after the rape, and the driver drove to a Clark service station. The victim, who had been disrobed by both men before the rapes, was given a jacket to cover herself. As

2. Since the sufficiency of the rape evidence is not challenged, it is unnecessary to describe the details of this evidence.

they left this station the passenger told the victim "that I was so pretty he wanted to keep me." The car stopped on a side street; both men again raped and sodomized the victim. Then after making the victim promise not to tell anyone, they let her go. The entire episode lasted about two hours.

After appellant's arrest, the victim was shown photographs by the investigating detective for the purpose of making an identification. She viewed seven photographs, from which she identified Osby Parker as the driver. She was then shown a single photograph by the detective, who said, "I now show you a photo of a party known as Aubrey Dale Parker. Have you ever seen this party before?" The victim identified appellant as the passenger.

At an in-trial suppression hearing the State conceded that this identification procedure was unduly suggestive, but introduced the following evidence regarding the victim's opportunity to observe appellant at the time of the offense.

The victim testified that when the car first pulled up to her, there was a street light nearby. The car's interior lights came on when the door was opened, and she saw both men's faces. When Osby Parker left the car at the first station, appellant turned the side of his face to the victim and she saw him from the distance of back seat to front seat. When Osby Parker opened the door at the second station, the light again came on, and the victim again saw appellant's face.

The entrance ramp scene of the first assault was lighted by street lamps, and headlights from other automobiles intermittently illuminated the L.T.D.'s interior. After the first assault, appellant remained in the back seat with the victim. During each rape, appellant faced the victim, his face six to ten inches from hers. Finally, she saw both men when she was released from the automobile.

## I.

The exhibition of a single photograph to the victim was impermissibly suggestive; the trial prosecutor so

conceded and the State does not question this position on appeal.

Due process prohibits testimony of out-of-court identifications conducted in an unnecessarily suggestive manner. *Stovall v. Denno,* (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.E.2d 1199. A subsequent in-court identification by the same witness is permissible if under all the circumstances, the in-court identification is reliable. The prior identification must not have been made under circumstances so suggestive as to produce "a substantial likelihood of irreparable misidentification." *Neil* v. *Biggers,* (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Swope* v. *State,* (1975) 263 Ind. 148, 325 N.E.2d 193. In *Swope* we held that the witness would be allowed to identify the accused at trial if an "independent basis" for the in-court identification could be shown. While "independent basis" is the test applied in a separate but related doctrine relating to identifications conducted in the absence of counsel,[3] the test in *Swope* is in reality the same test as that in *Neil* v. *Biggers.*

In determining whether the in-court identification was the product of "irreparable misidentification," this Court looks to the factors enumerated in *Swope, supra,* at 325 N.E.2d 197, and in *Neil* v. *Biggers, supra,* at 409 U.S. 199, 93 S.Ct. 382.

The facts of paramount importance to this question relate to the opportunity of the witness to view the offender at the time of the offense; the duration for which the witness can observe the perpetrator; the distance separating them; the lighting conditions; and circumstances affecting the amount of attention the witness can devote to observing the guilty party.

In this case the victim was in the same automobile with appellant for two hours. Part of that time appellant sat beside her in the back seat, and on two separate occasions she

---

3. See explanation in *Norris* v. *State,* (1976) 265 Ind. 508, 356 N.E.2d 204.

was forced to submit to sexual relations with him. These events occurred in the middle of the night, but at least three times the vehicle's interior lights came on, and three times it was stopped in lighted service station lots. Moreover the first rape by each assailant took place off a lighted highway ramp. We have held that an in-court identification was proper in spite of a suggestive photographic display in *Manns* v. *State,* (1973) 260 Ind. 680, 299 N.E.2d 824 (DeBruler, J., dissenting). In *Manns* the witness was also a rape victim seized at night; in spite of the fact that she was with her assailants no more than one and one-half hours, and had her head covered with a coat during the trip to and from the scene of the rape, this Court found that there was an independent basis for the in-court identification.

In *Neil* v. *Biggers, supra,* the victim was seized at night in the doorway of her unlit kitchen, thrown to the floor, and forced to accompany her assailant about two city blocks to a place in some woods, where she was raped. The incident lasted from fifteen minutes to half an hour, on a night with a full moon. The Supreme Court found no substantial likelihood of misidentification.

Other factors enumerated in *Swope* include witness' ability to give an accurate description of the accused to the police before the suggestive confrontation. This factor played a major role in our decision in *Bowen* v. *State,* (1975) 263 Ind. 558, 334 N.E.2d 691, in which a young sodomy victim was allowed to identify the defendant in trial as her assailant, despite an earlier suggestive photographic display. Appellant urges that since the record here is silent as to any description given by the victim, we should draw an inference adverse to the reliability of her in-court identification. We see no logic in this position. A silent record does not show whether the victim gave any sort of description, whether she was ever asked to, or whether she could have done so. Appellant was free to elicit such information in the suppression hearing.

We believe that the totality of the circumstances surrounding the victim's identification of appellant show that her trial

identification was not the product of "irreparable misidentification" caused by the suggestive photographic display, and that the trial court did not err in overruling appellant's motion to suppress.

## II.

At the close of the State's evidence appellant moved the court for a directed verdict of acquittal. The trial court denied his motion and appellant called his mother, Mrs. Grace Gardner, as a witness. He assigns error to the overruling of his directed verdict motion.

The introduction of evidence by a defendant after the overruling of his motion for a directed verdict waives any error in the overruling of the motion. *Ward* v. *State*, (1965) 246 Ind. 374, 205 N.E.2d 148.

Appellant also argues that there was insufficient evidence to support the jury's verdict, and that the verdict was contrary to law, both with regard to the finding of guilty of kidnapping. Appellant concedes at the outset that in determining this issue on appeal, we do not re-weigh the evidence or judge the credibility of witnesses, but look to the evidence supporting the verdict, and reasonable inferences therefrom. The conviction will be affirmed if, from that standpoint, there is sufficient evidence of probative value with respect to each element of the offense to allow the jury to reasonably find that appellant was guilty, beyond a reasonable doubt. *James* v. *State*, (1976) 265 Ind. 384, 354 N.E. 2d 236.

The statute under which appellant was convicted reads as follows:

"Kidnapping.—Whoever kidnaps, or forcibly or fraudulently carries off or decoys from any place within this state, or arrests or imprisons any person, with the intention of having such person carried away from any place within this state, unless it be in pursuance of the laws of this state or of the United States, is guilty of kidnapping, and, on conviction, shall be imprisoned in the state prison during life."

The crime of kidnapping can be committed in any of three ways: by "forcibly carrying off," by "fraudulently carrying off or decoying," or by "imprisonment with the intent to carry off." *Davis* v. *State*, (1976) 265 Ind. 476, 355 N.E.2d 836.

Appellant argues that the evidence, while it shows he raped the victim, fails to show that he did any of the above things, or aided, abetted, or encouraged Osby Parker in doing any of them.

It is true that Osby Parker induced the victim to enter the car, and slammed its door on her boyfriend. Osby also drove the car which "carried off" the victim, and forcibly prevented her from leaving it at the second service station. Osby could have done all of this without appellant having been present. However, the victim testified that when the car stopped at the first service station, and Osby Parker left it, appellant locked both doors, and remained in the front seat, although the victim had previously asked to be let out. This action is enough to constitute an "imprisonment" within the meaning of the statute. The jury could also have reasonably inferred that appellant intended that the victim be "carried off," in view of the probability that Osby Parker would return to the automobile and drive it off.

Alternatively, appellant's actions in "guarding" the victim in Osby Parker's absence is sufficient to establish that appellant aided Osby in the kidnapping. Thus the evidence was sufficient to warrant the jury's finding appellant guilty either as a principal or an accessory.

### III.

Appellant's third argument is that the imposition of a sentence of life imprisonment upon his conviction for kidnapping constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Art. 1, § 16 of the Indiana Constitution. Appellant concedes that we have previously determined

that the kidnapping statute is not unconstitutional on these grounds. *Vacendak* v. *State,* (1976) 264 Ind. 101, 340 N.E.2d 352, *Beard* v. *State,* (1975) 262 Ind. 643, 323 N.E.2d 216.

However, appellant contends that the kidnapping statute contravenes the Eighth Amendment because it subjects all persons who violate it to the same sanction, without regard to circumstances which would mitigate or aggravate the seriousness of the offense. Appellant relies upon the Supreme Court's holdings in *Woodson* v. *North Carolina,* (1976) 96 S.Ct. 2978, and *Roberts* v. *Louisiana,* (1976) 96 S.Ct. 3001. In both *Woodson* and *Roberts* the Court invalidated statutes which imposed mandatory death penalties for specified categories of homicides. Appellant suggests that our kidnapping statute, like these murder statutes "treats all persons convicted of a designated offense not as uniquely individual human beings, but as members of a faceless, undifferentiated mass to be subjected to the blind infliction" of a mandatory penalty. *Woodson, supra,* at 96 S.Ct. 2991.

We agree that in this respect our kidnapping statute resembles the North Carolina and Louisiana statutes. But this does not mean that the Supreme Court intended to include statutes such as our kidnapping act within the sweep of its decision. The Court in *Woodson* went on to explain:

"While the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

*This conclusion rests squarely on the predicate that the penalty of death is qualitatively different from a sentence of imprisonment, however long.* Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two." (Citation omitted.) (Emphasis added.) 96 S.Ct. at 2991-92.

We believe that *Woodson* and *Roberts* are grounded in the unique nature of the death penalty, and do not announce a principle applicable to all penalties for crimes. We are therefore left with the proposition that it is better policy to tailor sentences to fit the individual offender and the particular crime. This may be true, but the decision that sentences be so tailored is entrusted to the Legislature, not this or any other court. *Lowe* v. *State,* (1973) 260 Ind. 610, 298 N.E. 2d 421.

## IV.

Finally appellant requests that we review his sentence in accordance with Art. 7, § 4, of our Constitution, which empowers the Court to "review and revise" sentences. In *Beard* v. *State, supra,* we expressed the view that this power appears to go beyond that power which this Court has always possessed, to revise sentences which exceed constitutional limits. 323 N.E.2d at 219. We, therefore, declined to exercise the power until a program of procedures for its orderly use could be established. Subsequently in *Stoehr* v. *State,* (1975) 263 Ind. 208, 328 N.E.2d 422, and *Delph* v. *State,* (1975) 263 Ind. 385, 332 N.E.2d 783, we reiterated this refusal. As of yet we have established no such program, and we therefore cannot grant appellant's request.

The conviction is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 358 N.E.2d 110.