Timothy GEORGE and Mark Wilbur, Defendants-Appellants,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–479A118.

Court of Appeals of Indiana, First District.

Sept. 27, 1979.

William H. Andrews, Baker, Barnhart & Andrews, Bloomington, for defendants-appellants.

Theodore L. Sendak, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

A jury found defendants-appellants Timothy George and Mark Wilbur guilty of conspiracy to commit a felony (theft).[1]

## FACTS

Mark Wilbur, Timothy George, James Burton, and Rodney Deckard were charged with conspiracy to steal property belonging to Keith Drost. The evidence favorable to the judgments reveals that Drost interrupted the men in the midst of their endeavors at approximately 5:00 a. m. on Sunday, September 25, 1977, after Drost was awakened by the barking of his dog. During an exchange of shotgun fire between Drost and the intruders, George and Burton were wounded. Drost held Wilbur hostage for several hours after George and Burton and Deckard departed posthaste.

George, Wilbur, Burton, and Deckard retained the same attorney to represent them at their trial for conspiracy to commit a felony (theft).[2] A jury found all four of the defendants guilty, and the Monroe Superior Court entered judgments accordingly. The convictions of Burton and Deckard were affirmed by this court in a memorandum decision filed July 24, 1979. George and Wilbur retained different counsel and now challenge the judgments entered against them.

## ISSUES

Because we find it necessary to reverse the judgments, we address only the following issues:

1. IC 1971, 35–1–111–1 (Burns Code Ed.). This section was repealed by Acts 1976, P.L. 148, § 24. For present law see IC 1971, 35–41–5–2 (Burns Code Ed., Repl.1979).

2. Drost testified that he interrupted the intruders as they attempted to steal marijuana from his marijuana patch.

1. Was a sufficient foundation provided for introduction of a shotgun into evidence?

2. Did the trial court erroneously admit hearsay and opinion testimony?

3. Were George and Wilbur denied effective assistance of counsel?

## DISCUSSION AND DECISION

### Issue One

■ George and Wilbur maintain that the trial court admitted into evidence a shotgun which was not relevant and for which a proper foundation had not been established.

Justice DeBruler wrote in *Candler v. State*, (1977) 266 Ind. 440, 456, 363 N.E.2d 1233, 1242:

> ". . . It is not true that only evidence which can be proved positively to have been in the possession of the accused is admissible. . . . Any evidence having even a slight tendency to prove a material fact is sufficiently relevant to be admitted. . . ." (Citations omitted)

Drost had testified that, when he apprehended Wilbur, Wilbur "told me that he had dropped a twelve gauge automatic shotgun and he had been looking for it."

Officer Inman testified that, while investigating the shooting at Drost's property, Inman discovered a twelve gauge automatic shotgun lying near Drost's residence. Lying next to the shotgun when he found it was a branch of marijuana. The shotgun was then admitted into evidence over objection.

The evidence served to relate the defendants to the crime charged. The trial court did not err when it admitted the shotgun into evidence.

### Issue Two

■ Wilbur and George argue as follows:

"Defendants were denied a fair trial in that Deputy Sheriff Bizzari was permitted to testify, over timely objection, to remarks made by Mr. Drost in his statement to the police regarding the events of September 25, 1977, which as to Defendants was hearsay evidence."

Wilbur and George assert that the timely objection can be found at page 420 of the transcript. The objection on page 420 is made in an effort to prevent admission of a photograph. We find no objection to testimony of Bizarri. Any error is waived.

Furthermore, hearsay evidence is objectionable because it rests for its value upon the credibility of an out of court asserter. *Martin v. State*, (1974) 262 Ind. 232, 314 N.E.2d 60. Wilbur and George had abundant opportunity to cross-examine Drost at length during the trial and did in fact take advantage of that opportunity.

■ In their reply brief Wilbur and George argue that the photograph was neither material nor relevant. This challenge is different from the objection made at trial. Any error is waived.

### Issue Three

■ George, Wilbur, Burton, and Deckard retained a single attorney to represent all of them at their trial. George and Wilbur now maintain that they were denied their Sixth Amendment right to effective assistance of counsel.[3]

Justice Prentice gave this warning in *Ross v. State*, (1978) Ind., 377 N.E.2d 634, 636:

> "Simultaneous representation of co-defendants is fraught with the potential for chaos at worst and frustration at best. It should be avoided as the plague. Code of Professional Responsibility, Canons 4, 5 and 9; Ethical Considerations 5–14, 15, 16, 17; 9–2. The road of litigation is full of blind curves, and this is especially true

3. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be in-

formed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

of criminal litigation. The lawyer who finds himself pledged to clients with conflicting interests has no completely safe haven. Even total severance leaves pitfalls, both for the clients and the lawyer. For the clients, it is likely that some unfavorable inference will arise; and for the lawyers, they should remember that the unsuccessful litigant seldom appreciates the subtleties of the rules or remember[s] the caveats issued before the stewardship was undertaken." (Our insertion)

Nevertheless, simultaneous representation of co-defendants is not *per se* evidence that ineffective representation has been provided. *Ross v. State*, supra. Justice Hunter wrote in *Stoehr v. State*, (1975) 263 Ind. 208, 211, 328 N.E.2d 422, 424–425:

". . . When the possibility of inconsistent interests is brought to the court's attention at the outset of the trial, reversal is required if the trial court requires the defendant to share the services of his attorney with another codefendant. . . At no point before or during the trial did appellants object to being jointly represented by the attorney whom they had employed. When such claim is first advanced in a motion to correct errors, the movant must show that prejudice resulted to him. . . ." (Citations omitted)

In *Stoehr v. State, supra*, at page 212 of 263 Ind., at page 425, of 328 N.E.2d, Justice Hunter explained why the joint representation had not constituted ineffective representation:

". . . Corwin asserts that the efforts of defense counsel in pointing up the weakness of the case against Albert necessarily prejudiced Corwin by tending to emphasize the strength of the case against him. Corwin's contention is clearly one of locking the barn door after the horse is gone. Undoubtedly some prejudice resulted to Corwin by the strategy employed by defense counsel, but that prejudice was not substantial, . . in view of his positive identification by the station attendant."

In *Ross v. State, supra,* Justice Prentice noted that the defendant was unquestionably guilty of aiding and abetting even if not guilty as the principal. He concluded at page 637 of 377 N.E.2d:

". . . Assuming that defense counsel may have been influenced by considerations presented by his direct or indirect involvement with various of the co-defendants, that influence could not have affected the outcome of defendant's trial, and any error presented by the representation of multiple defendants was harmless beyond a reasonable doubt."

Wilbur and George and their two co-defendants, Deckard and Burton, were charged with conspiracy. Our Supreme Court explained in *Shelton v. State*, (1972) 259 Ind. 559, 567, 290 N.E.2d 47, 51:

". . . The Indiana conspiracy to commit a felony statute IC 1971, 35–1–111–1 (Ind.Ann.Stat. § 10–1101 [1956 Repl.]) requires the uniting or combining with any person or persons for the purpose of committing a felony. The gist of such a conspiracy is the conscious coming together of minds for the purpose of committing a felony.

'In order to be a conspiracy there must be an intelligent and deliberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and cooperative conduct in the unlawful and criminal enterprise are the essential elements of criminal conspiracy . . .' *Coughlin v. State* (1950), 228 Ind. 393, 92 N.E.2d 718."

In proving the existence of a conspiracy, the State is limited by certain rules of evidence, including the following which we quote from *Patton v. State*, (1961) 241 Ind. 645, 648–49, 175 N.E.2d 11, 12–13:

"Reference should here be made to the well established rule in this state that evidence of acts or statements of parties

to a conspiracy in furtherance of its objects, is admissible against all the parties to the conspiracy though the statements were made or the acts were performed in the absence of the defendants. . . .

\* \* \* \* \* \*

It is further well established that only those acts and declarations which transpired or were made between the beginning and the ending of the conspiracy and in furtherance of its objects may be shown against the asserted coconspirators who did not make the declarations or do the acts in question. . . . In this connection it has been held that a confession or admission of the existence of a conspiracy by one coconspirator after he has been apprehended or arrested is not in furtherance of the conspiracy so as to be admissible against his fellow conspirators. . . ." (Citations omitted)

In the case at bar, an officer recounted certain statements incriminating Wilbur and George which were made by Burton and Deckard out of the presence of George and Wilbur after Burton and Deckard had taken George to the hospital for treatment of his wounds. Drost repeated statements incriminating George which were made by Wilbur out of the presence of George after Drost had apprehended Wilbur. Counsel for the defendants failed to object on behalf of any of his clients when these statements were recounted. Neither did he seek any limitation on the use of the evidence.

Even more critical is the fact that Deckard, unlike his co-defendants, elected to testify. As counsel for Deckard, the defense attorney obviously could not use the opportunity to cross-examine his own client and elicit testimony from Deckard that would exculpate Wilbur and George.[4]

We are constrained to hold that Wilbur and George have demonstrated prejudice caused them by their attorney's attempt to represent all of the co-defendants. Having

carefully considered the nature of the conflict of interests as revealed by the record, we cannot reach the conclusion, as the Supreme Court did in *Ross* and in *Stoehr* based upon those records, that any error due to representation of the multiple defendants was harmless beyond a reasonable doubt. Neither can we conclude from a silent record that either George or Wilbur made a knowing waiver of his Sixth Amendment right to the effective assistance of counsel.

The judgments are reversed. The trial court is directed to provide Timothy George and Mark Wilbur a new trial. We deem it appropriate also to warn of the potential conflict of interests of Wilbur and George.

LYBROOK and ROBERTSON, JJ., concur.

---

4. Deckard and Burton had been together since nine or ten o'clock in the evening of September 24, 1977. George and Wilbur did not join them until later. Wilbur and George maintain that their defense counsel was prevented by a conflict of interests from cross-examining Deckard in pursuit of evidence showing that Deckard and Burton schemed to steal the marijuana but Wilbur and George were non-participants in any such conspiracy.