J. W. MORRIS, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–781A212.

Court of Appeals of Indiana,
First District.

March 31, 1982.

Geoffrey A. Rivers, Muncie, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

J.W. Morris appeals his conviction of voluntary manslaughter in violation of Ind.

Code 35–42–1–3 (Supp.1979)[1] after trial by jury in the Henry Circuit Court. We affirm.

## STATEMENT OF THE FACTS

The facts most favorable to the state show that on November 25, 1978, Johnny Ray Jones (Jones), Dana Morris, and the defendant set out from defendant's mother's home to go to the home of Alma Arbuckle where the defendant's father was living. Jones carried Dana Morris's shotgun. Soon thereafter, the bedroom window of Arbuckle's house was shot out by a shotgun blast.

The evidence as to who shot out the window, as the evidence as to who shot and killed David Upton III (Upton), is conflicting. Jones testified that he stopped in an alley and did not go to Arbuckle's house. Later when he encountered Dana and the defendant, Dana told him (Jones) that he had shot Upton. Jones then agreed to say he had shot Upton. However, both Dana and the defendant testified that Jones shot out the window at Arbuckle's house. After shooting out the window, Jones and the defendant ran down an alley. When they stopped beside a house near a vacant lot, Upton, who at his mother's request had gone outside to investigate the blast, shined a flashlight on the defendant. The defendant thought Upton had a gun in his hand. He told Jones he thought the person had a gun in his hand and said, "Let's split." The defendant ran in one direction and Jones ran in another direction. Shortly after hearing a shotgun blast, the defendant saw Jones crossing a street. Jones told Morris he thought he had killed someone. The defendant and Jones met up with Dana on the way back to the defendant's house, and Jones told Dana he thought he had shot someone. Upon returning to the defendant's home, the defendant or Dana hid the shotgun. Upton was found lying in the street with a gunshot wound in the chest. He subsequently died.

1. Ind.Code 35–42–1–3 (Supp.1979) reads:

"(a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a class B felony.

The defendant, along with Jones, was charged with murder. He was tried and convicted of murder. However, our supreme court reversed the defendant's conviction in *Morris v. State*, (1980), Ind., 399 N.E.2d 740. After a change of venue, the defendant was tried again and found guilty of voluntary manslaughter. He was sentenced to eight years, and then he perfected this appeal.

## ISSUES

Although the defendant set out eleven issues in his brief, he expressly waived six of those issues. Thus, the following issues, which we have restated, have been raised for our consideration:

1. Whether the trial court abused its discretion by allowing state's Exhibit No. 8, a photograph of the deceased taken in the autopsy room, into evidence.

2. Whether the trial court abused its discretion in admitting into evidence state's Exhibits Nos. 7 and 12 which were prior statements made by Jones and the defendant, respectively.

3. Whether the trial court abused its discretion when it did not allow the jury to hear the entire prior testimony of Jerry Stephens from the defendant's first trial.

4. Whether the decision of the trial court is contrary to law.

## DISCUSSION AND DECISION

Before discussing the issues in this case, we feel it is incumbent upon us to instruct both counsel for the defendant and the state on the proper method of summarizing the facts in a case on appeal. Both counsel for Morris and counsel for the state have set out their statement of the facts by relating to this court the testimony of each witness who testified. That is not the prop-

(b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter."

er manner in which the statement of facts in an appellate brief is to be constructed. Rather, "[i]t should be a concise narrative summary of the facts in a light most favorable to the judgment. It should not be a summary of each witnesses' testimony." *Moore v. State*, (1981) Ind.App., 426 N.E.2d 86, 90. Furthermore, the reiteration of each witness's testimony in defendant's brief is improperly contained under the heading "STATEMENT OF THE CASE." As Judge Chipman stated in *Moore v. State, supra*, at 89:

> "The statement of the case is intended to assist this court by setting forth the procedural posture of the case. Although it is unnecessary to include the contents and dates of all of the pleadings, hearings and orders, it is necessary to accurately report all entries which explain the trial court's actions and affect the issues on appeal."

Defendant's brief further violates Ind. Rules of Procedure, Appellate Rule 8.3(A) by providing a verbatim statement of the jury's verdict instead of a verbatim statement of the judgment. A failure to provide a verbatim statement of the judgment can result in the affirmance of the trial court's judgment. *Moore v. State, supra.* Counsel would be well advised to follow precisely A.R. 8.3(A) when submitting a brief to this court on appeal.

*Issue One*

During his testimony, Muncie Police Officer Jack Stonebraker identified state's Exhibit No. 8, a photograph of David Upton with an autopsy identification tag lying on his throat and a medical breathing device in his mouth. When the state offered this exhibit into evidence, the defendant objected on the grounds the exhibit had no probative value, did not show the cause of death, did not aid the jury in the determination of the cause of death, and was used solely to inflame the jury. The exhibit was admitted into evidence over the defendant's objection. He now contends the trial court abused its discretion in admitting the photograph into evidence because it had no probative value and inflamed the jury.

Generally, it is within the sound discretion of the trial court to rule on the admission of photographic evidence. *Dillon v. State*, (1981) Ind., 422 N.E.2d 1188. The trial court's discretion will not be disturbed on appeal unless the appellant demonstrates it has been abused. *Id.* A photograph must be relevant and a true and accurate representation of the thing it is purported to portray to be admissible. *Dillon v. State, Id.* Furthermore, even though a photograph may be gruesome, it is admissible if it explains relevant oral testimony given at the trial and is admitted for the purpose of showing the scene of the crime or the nature of the victim's wounds. *Owens v. State*, (1975) 263 Ind. 487, 333 N.E.2d 745. However, when a photograph does not tend to prove or disprove some material fact in issue which has already been established and serves to arouse passion and prejudice, its admission will constitute an abuse of discretion. *See Kiefer v. State*, (1958) 239 Ind. 103, 153 N.E.2d 899, *reh. granted* 241 Ind. 176, 169 N.E.2d 723 (1960), *cert. denied* 366 U.S. 914, 81 S.Ct. 1089, 6 L.Ed.2d 238 (1961).

In the present case, the photograph does not elucidate Officer Stonebraker's testimony about Upton's wounds since state's Exhibit No. 8 does not depict those wounds. Nonetheless, the state contends its Exhibit No. 8 tended to prove a material fact, *i.e.*, that David Upton III was a human being. It is true that the photograph does show Upton to be a human being and that the state does have to prove the defendant killed another human being. *See* Ind.Code 35–42–1–3 (Supp.1979). However, the use of autopsy photographs for such a purpose could lead to a reversal if the prejudicial effect of the photograph outweighs its probative value, especially when sufficient other evidence establishes the fact which the state desires to prove. *See Kiefer v. State, supra.* Such a situation is not present in the case at bar. The photograph introduced by the state is not so gruesome as to outweigh its probative value or inflame the passions of the jury. We find the trial

court did not abuse its discretion in admitting state's Exhibit No. 8.

*Issue Two*

The defendant contends the trial court erroneously admitted into evidence one of his prior inconsistent statements, denominated state's Exhibit No. 12, and a prior inconsistent statement of Johnny Ray Jones, denominated state's Exhibit No. 7. Specifically, he contends there was not any foundation laid for the admission of these statements since both he and Jones admitted to having made prior inconsistent statements. The state counters that Morris has waived any error as to the admission of state's Exhibit No. 7 since he did not object on the grounds of lack of foundation, but rather on the grounds of irrelevancy. We agree with the state.

It is axiomatic that an appellant cannot assert on appeal different grounds for objection to the admission of evidence than asserted at trial. *See Carter v. State,* (1980) Ind.App., 412 N.E.2d 825, *trans. denied; Ralston v. State,* (1980) Ind.App., 412 N.E.2d 239, *trans. denied* (1981); *Smith v. State,* (1980) Ind.App., 403 N.E.2d 869, *trans. denied.* Furthermore, a general objection such as "irrelevant" at trial to the admission of evidence preserves no issue for review on appeal. *O'Conner v. State,* (1980) Ind., 399 N.E.2d 364; *Ringley v. State,* (1979) Ind.App., 395 N.E.2d 339. Thus, we will not consider the defendant's argument that state's Exhibit No. 7 was erroneously admitted.

We now turn to the question of whether state's Exhibit No. 12 was erroneously admitted. During the cross-examination of the defendant, the state admitted into evidence its Exhibit No. 12 which was a statement made by the defendant on November 26, 1978. This exhibit was admitted only for impeachment purposes by the trial court since our supreme court had previously held in *Morris v. State,* (1980) Ind., 399 N.E.2d 740, that this statement was the fruit of an illegal arrest. On appeal, the defendant contends the admission of state's Exhibit No. 12 for impeachment purposes constitutes reversible error because the state failed to lay a proper foundation for its admission and because he (Morris) admitted making the statement.

When a witness is to be impeached by the use of extrinsic evidence, a proper foundation must be made. *Aikins v. State,* (1971) 256 Ind. 671, 271 N.E.2d 418. The witness' attention must be directed to the prior statement by giving the substance of the statement, and by stating the date, place, and person to whom it was made. *Smith v. State,* (1981) Ind., 414 N.E.2d 299; *Gradison v. State,* (1973) 260 Ind. 688, 300 N.E.2d 67. "[A]ny question framed in such a manner as would adequately call the alleged utterance to the attention of the witness sufficiently to enable him to recollect the same, if recallable," would be a proper foundation. *Gradison v. State,* (1973) 260 Ind. 688, 709, 300 N.E.2d 67, 81. Furthermore, the witness must deny having made the statement or assert that he cannot recall having made it before extrinsic evidence is introduced. *Craven v. Niagara Machinery & Tool Works, Inc.,* (1981) Ind. App., 417 N.E.2d 1165 (transfer pending). "Once the witness unequivocally admits that he made the inconsistent statement, he has impeached himself and further evidence that he made the inconsistent statement is unnecessary for impeachment purposes. [Footnote omitted.]" *Walker v. State,* (1975) 166 Ind.App. 286, 291, 335 N.E.2d 834, 837.

In the present case, Morris testified on direct examination that he did not shoot out the window at the house where his father was staying and that he did not shoot the deceased, Upton. On cross-examination, the defendant admitted that he and Jones made a deal to split the blame, *i.e.,* they would tell the police the defendant shot out the window and Jones shot the deceased. The defendant stated on cross-examination that he made such a statement to the police. His testimony on cross-examination as to those facts was as follows:

"Q. And while you were waiting, while you were at Detective Headquarters

there, you got together and you made a different agreement, is that correct?

"A. That's correct.

"Q. And what was the agreement then?

"A. That I would take the blame for shootin' out the window and he would take the blame for shootin' David Upton, shootin' the kid, and that we went down there to kill my father that night.

"Q. That's not the same story you told yesterday when your attorney was questioning you, is it?

"A. Same story?

"Q. Yeh, didn't you say yesterday and haven't you always maintained that the agreement was made while you were in jail?

"A. We made agreement in jail and there.

"Q. That you were gonna split up the blame?

"A. That's right, sir.

"Q. And in your statement did you split up the blame?

"A. Yes, I do believe we did.

"Q. How come Jones didn't make a statement that day splittin' up the blame?

"A. I made a third statement sayin' I didn't hold the firearm, and Johnny Jones blew out the window and Johnny Jones shot and killed the kid, I didn't have a firearm that time at all.

"Q. How come Jones didn't make a statement on the 26th sayin' the same thing you did if that was your agreement?

"A. He didn't care.

"Q. He made a statement the next day though, didn't he?

"A. Yes, I guess he did.

"Q. I hand you what's been marked as State's Exhibit 12 and ask you if you recognize that?

"A. That looks like my second statement, Mr. Alexander.

"Q. Is that your signature at the bottom?

"A. Yes, sir, it is.

"Q. And that's the statement that you gave the police on the 26th, is that correct?

"A. Yes, sir, 26th at 2:30 P.M., yes.

"MR. ALEXANDER: Your Honor, I move the admission of State's Exhibit 12."

Record at 514–16.

Although the state confronted the defendant with the written statement and asked when and to whom the defendant made the statement, the state did not give the substance of the prior statement or ask the defendant about inconsistencies between the statement and his testimony. Thus, the foundation laid by the state was inadequate. Furthermore, even if one considers the foundation to be sufficient, it is clear the defendant admitted that he made the prior inconsistent statement. Thus, state's Exhibit No. 12 was not admissible for impeachment purposes. *See Farm Bureau Mutual Insurance Co. of Indiana v. Seal*, (1962) 134 Ind.App. 269, 179 N.E.2d 760, *trans. denied.*

 However, we do not find the erroneous admission of state's Exhibit No. 12 to require reversal in the present case. The erroneous admission of evidence is not prejudicial when the same or similar evidence has been admitted without objection. *D.H. v. J.H.*, (1981) Ind.App., 418 N.E.2d 286; *In re Marriage of K.B. v. S.B.*, (1981) Ind.App., 415 N.E.2d 749; *Ralston v. State*, (1980) Ind.App., 412 N.E.2d 239, *trans. denied.* State's Exhibit No. 12 essentially was a statement by the defendant that he had gone to a house with the intent to shoot his father, that he shot out the window in the house where his father was staying, that when he stopped to get a second shot the deceased shined a light on him, that he left, and that the deceased followed Jones who shot the deceased. This same evidence was admitted into evidence at trial when state's Exhibit No. 7, Jones's statement, was admitted into evidence. In state's Exhibit No. 7, Jones stated that Ruby Morris, the defendant's mother, told him and the defendant to shoot the defendant's father, that the defendant shot out the window at the house

where his father lived, that the defendant dropped the gun and he (Jones) picked it up, that the deceased came out of his house with a flashlight, that he (Jones) split up from the defendant and was chased by the deceased, and that he (Jones) shot the deceased, Upton. Since this evidence, which was the same as that contained in state's Exhibit No. 12, was admitted into evidence, the defendant was not prejudiced by the admission into evidence of state's Exhibit No. 12.

*Issue Three*

The defendant offered into evidence the entire sworn testimony of an unavailable witness, Jerry Stephens. Stephens had testified at the defendant's first trial that he (Stephens) and Upton had been shooting dogs with Upton's rifle earlier in the evening of November 24, 1978. Further, Stephens had testified that he and Upton had been drinking that evening. The defendant contended there were three reasons for the admissibility of Stephens's prior testimony:

"As part of the res gestae of this case, the sequence of events that led up to his death, it's also used for the impeachment purposes of two prior witnesses, one being Carl Ent and the other one Barbara Upton, that the victim had not drank or consumed any alcoholic beverages that evening, and the third reason is to show the demeanor and behavior pattern of the victim in the aspect of there might be self-defense plea possible from the person, in this case we allege Johnny Jones, who allegedly shot them, and the exhibit introduced in evidence by the State of Indiana, which states that Johnny Jones states in that that [sic] the victim had threatened to blow his ass away, had reached into his pants as if to get a pistol, and the witness, Johnny Jones, then shot and killed the victim. And we believe that this information should be brought to the Jury."

Record at 426. The state objected to the admission of the prior testimony of Stephens on the grounds of irrelevancy. The trial court sustained the objection as to

Stephens's testimony that he and Upton had been shooting dogs. However, the trial court admitted into evidence that portion of Stephens's testimony that he and Upton had been drinking since two witnesses had testified Upton had not been drinking. The defendant now contends the trial court abused its discretion when it excluded the evidence that Upton had been shooting dogs on the evening of November 24, 1978. He alleges the omitted testimony would have shown "the character of the deceased, his physical and mental state shortly before the shooting, his aggressiveness, and the availability of a fire arm for use by the decedent." Brief for Appellant at 46. Furthermore, the defendant argues the testimony was *res gestae* and that since it was deemed relevant and material in his first trial, its relevancy is a matter of *res judicata*. We find none of the defendant's contentions to be persuasive.

First, we note that the defendant has failed to cite to us any authority for his *res judicata* argument. A failure to cite pertinent authority constitutes waiver of the alleged issue of error. *Lenard v. Adams*, (1981) Ind.App., 425 N.E.2d 211. Thus, we will not consider Morris's *res judicata* argument.

Second, the prior testimony of Stephens does not constitute *res gestae*. The theory of *res gestae* allows the admission of evidence of happenings near in time and place which complete the story of the crime. *Brown v. State*, (1981) Ind., 417 N.E.2d 333; *Haynes v. State*, (1980) Ind. App., 411 N.E.2d 659. This includes evidence of uncharged crimes committed by the defendant which occurred near in time and place of the crime where each of the crimes is a part of an uninterrupted transaction. *Bennett v. State*, (1981) Ind.App., 416 N.E.2d 1307. The evidence that the deceased, early in the evening of November 24, 1978, was shooting dogs along with Stephens is not related to the crime at hand. It neither happened near in time nor does it complete the story of the crime.

Finally, we turn to the issue of whether Stephens's prior testimony is rele-

vant. "Evidence which has even a slight tendency to prove a material fact in issue is relevant. *Jones v. State*, (1979) Ind., 385 N.E.2d 426." *Bush v. State*, (1980) Ind. App., 401 N.E.2d 796, 800, *trans. denied.* The trial court's ruling on the relevancy of evidence is accorded wide latitude. *Begley v. State*, (1981) Ind., 416 N.E.2d 824. Furthermore, this ruling "will be reversed only where clear abuse is shown." *Indiana National Corp. v. Faco, Inc.*, (1980) Ind.App., 400 N.E.2d 202, 206. Morris has not made such a showing. He contends the testimony would have shown the character of the deceased, especially his aggressiveness. The character of a deceased is not usually a material fact in issue in a homicide trial. If a defendant alleges self-defense and alleges the deceased, who had violent propensities, had threatened him (the defendant), then the deceased's violent temperament might be an issue in the case. In such a case, evidence of the deceased's violent temperament might be material to the issue of whether the defendant had reasonable grounds for a belief that he was in danger requiring him to act in self-defense. However, in the present case, Jones, who the defendant contends shot Upton, testified he did not know Upton. Furthermore, Jones did not testify that he knew Upton owned a gun or had been shooting dogs. Since the question of self-defense is to be viewed from the defendant's perspective, *Williams v. State*, (1974) 262 Ind. 382, 316 N.E.2d 354, and Jones had no knowledge of Upton's action of shooting dogs, Stephens's prior testimony as to that fact did not tend to prove a material fact in issue. The trial court properly excluded that portion of Stephens's prior testimony.

*Issue Four*

As his final allegation of error, the defendant contends the judgment is contrary to law because the first three errors were contrary to law. Inasmuch as this allegation of error is nothing but a recapitulation of the first three issues and we have found no reversible error in those issues, we need not discuss this issue.

Judgment affirmed.

NEAL and ROBERTSON, JJ., concur.