JIMMY RAY CAMBRON *v.* STATE OF INDIANA.

[No. 274S44. Filed February 19, 1975.]

*Robert J. Mahoney, Isadore D. Rosenfeld,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *John H. Meyers,* Deputy Attorney General, for appellee.

DeBruler, J.—Appellant, Jimmy Ray Cambron, was indicted for first degree murder, IC 1971, 35-13-4-1, being Burns § 10-3401. In a trial by jury in LaPorte Circuit Court, Judge Alban M. Smith presiding, appellant was found guilty of second degree murder, IC 1971, 35-1-54-1, being Burns § 10-3404, and sentenced to fifteen to twenty-five years imprisonment.

He appeals on two grounds: (1) that the court erred in admitting into evidence two photographs; (2) that the evidence independent of appellant's out-of-court confession was insufficient to establish the corpus delicti and to support the verdict.

The following is a statement of the facts as presented by the State. On December 2, 1972, appellant and a friend, Simmons, were driving around and drinking. They stopped at Baumgartner's house, and he asked them to take him out either to cash his pension check or to buy some liquor. They drove him to several stores but none would cash his check. Finally, he bought a six-pack of beer and a fifth of whiskey, and all three went back to his house to drink. After thirty minutes to an hour, Simmons suddenly got upset and kicked Baumgartner, who grabbed Simmons' shoulder and fell to the floor. Simmons took his wallet and keys from his pocket. At that point, either Simmons or appellant or both struck Baumgartner eleven blows with a meat tenderizer from his

kitchen. Appellant carried out the victim's rifle and Simmons took his wallet, a radio and some cigarettes.

They drove away and saw two girls and a boy whom they knew hitchhiking. They agreed to drive them to their destination. On the way there, near a bridge, appellant told Simmons to throw the tenderizer out the window, and he did so. Appellant almost got into a fight with the boy, but Simmons stopped him. They dropped the hitchhikers off and retraced some of their route. Near the same bridge, but on the opposite side of the street, Simmons threw the wallet and keys out of the car.

Soon thereafter, they were involved in a traffic accident. Simmons got into an argument with the other driver and hit him, but appellant intervened. Then appellant got into a fight with an acquaintance who was heckling him. When the police arrived at the scene of the accident, they arrested appellant for disorderly conduct and public intoxication. He was released the next morning, but, on December 4th, officers came to the location where appellant and his father were working and took them to the Detective Bureau. At first, appellant denied any part in the homicide, but, during the third interrogation, he admitted that he, too, struck Baumgartner with the tenderizer. He said that Simmons needed money and suggested that they rob Baumgartner and that they took Baumgartner to cash his check with the intention of robbing him. He said that after Simmons had struck Baumgartner with the tenderizer, he moved slightly and moaned, and Simmons told appellant to finish him off. Appellant said he grabbed the tenderizer and struck Baumgartner on the head three or four times. At this point in the questioning, appellant's father interrupted and asked that the interrogation end. At trial, an officer testified to appellant's statements and a synopsis was read into evidence, but appellant, himself, was never asked to sign the statement, which apparently was not reduced to written form on the date it was given.

At trial, appellant objected to the admission of all of the

photographs, because they were "inflammatory and highly prejudicial" and were not indicative of the res gestae. On appeal, he objects to two photographs: (1) the head of the victim after he had been moved from the scene of the crime, but before the blood had been wiped away to show the wounds; (2) a pool of blood on the floor near the lower corner of a desk, with bloodstained papers strewn around the floor.

We agree with appellant that these photographs were gruesome. However, this Court has repeatedly upheld the trial court's decision to admit into evidence gruesome and inflammatory photographs as long as they are relevant and portray accurately the object or scene they represent. In contrast, photographs which distort or likely to confuse the jury are inadmissible. *Kiefer* v. *State* (1958), 239 Ind. 103, 153 N.E.2d 899 (Photograph of the hands and instruments of the surgeon inside the deceased's chest during the autopsy and photograph of the body showing additional incisions made by the doctor performing the autopsy were inadmissible.).

The photographs in issue showed the victim's head completely covered with blood and the pool of blood left by the victim's wounds. Although the State introduced into evidence other photographs of the victim lying on the floor, of the room in disarray after the body had been moved, and of the victim's head after it had been washed and shaved to reveal the eleven wounds, none of these photographs showed the blood on the head and floor clearly. One of the questions of fact was the origin of the blood which covered the front of appellant's shirt, undershirt, trousers, and shoes, including the instep of the shoes. The officer from the Police Laboratory who testified did not state what type of blood appellant had and reported that he was unable to determine the blood type of the stains on the clothes and shoes. Appellant testified that he was never closer than six feet to the victim and that the blood came from a nose-

bleed he sustained in the fight after the automobile accident. To the contrary, the State sought to present the jury with circumstantial evidence from which the jury could infer that the blood came from the victim. These photographs were relevant, because they made the inference desired by the State more probable than it would have been without that evidence. McCORMICK, EVIDENCE, § 185 at 437 (2d. ed 1972). We find no error in the decision of the trial court to admit these photographs over appellant's objections.

Appellant's second argument has two aspects. He asserts that the State did not introduce independent evidence of the corpus delicti which would justify the admission of appellant's out-of-court statements. He asserts also that the evidence as a whole, independent of his statements, was not sufficient to support the verdict.

In order to avoid the risk of convicting someone for a crime which he confessed, but which never occurred, a confession must be excluded, unless the State introduces corroborating evidence concerning the corpus delicti. *Parker* v. *State* (1949), 228 Ind. 1, 88 N.E.2d 556. The corpus delicti is variously defined. To establish the corpus delicti for the purpose of admitting into evidence a confession, this Court has required independent evidence of (1) the occurrence of the specific kind of injury (in homicide, a person deceased), and (2) somebody's criminal act as the cause of the injury (in homicide, that the death was caused by the unlawful conduct of another person). *Parker, supra; Simmons* v. *State* (1955), 234 Ind. 489, 129 N.E.2d 121. The evidence establishing the corpus delicti may be circumstantial, as for any other material fact that must be proved. *Messel* v. *State* (1911), 176 Ind. 214, 95 N.E. 565. In the case at bar, the police and the doctor presented evidence that Baumgartner had died from the effects of repeated blows to the head with a meat tenderizer.

Most Indiana cases speak of the corpus delicti as the "specific crime charged", or "the crime" or, *e.g.*, "the rape".

*Parker,* 228 Ind. at 6; *Messel,* 176 Ind. at 217. These cases may require that the State introduce some independent evidence of each of the elements of the crime in order to establish the corpus delicti. Accord, *Ellis* v. *State* (1969), 252 Ind. 472, 250 N.E.2d 364; *Markiton* v. *State* (1957), 236 Ind. 232, 139 N.E.2d 440. In the present case, since appellant was found guilty of second degree murder, the State would have had to present evidence that someone "purposefully and maliciously" killed a human being. Burns § 10-3404, *supra.* As stated above, the independent evidence showed the death of a particular person by the agency of another. Purpose and malice may be inferred from the circumstances and from the intentional use of a deadly weapon in a manner reasonably calculated to cause death. *Jones* v. *State* (1970), 253 Ind. 456, 255 N.E.2d 105. The medical evidence that an old man was struck on the head eleven times with an instrument or some blunt object would support an inference of malice and purpose. Therefore, according to even the strictest definition, the State introduced independent evidence of the corpus delicti. For the preliminary purpose of determining whether the confession is admissible, the State did not have to prove the corpus delicti beyond a reasonable doubt.

For a conviction, however, the State had to prove each of the elements of the crime, that is, the corpus delicti, beyond a reasonable doubt. Appellant argues that, without his out-of-court confession, the State did not prove his participation in the homicide beyond a reasonable doubt. This is not a ground for complaint. The State was not obliged to prove its case using the independent evidence alone. The confession, once admissible, was evidence to be weighed along with every other item of evidence in determining whether the State had proved beyond a reasonable doubt that appellant was the agent of the crime. *Messel, supra;* WHARTON, CRIMINAL EVIDENCE § 691

(13th ed. 1973). The evidence including the confession was sufficient to support the verdict.

The judgment of the trial court is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 322 N.E.2d 712.