EARL PENMAN *v.* STATE OF INDIANA.

[No. 2-1074A253. Filed April 10, 1975. Rehearing denied May 13, 1975.]

T. H. St. Clair, Lewis, Bowman, St. Clair, Bennett & Wagner, of Indianapolis, for appellant.

Theodore L. Sendak, Attorney General, Robert S. Spear, Deputy Attorney General, for appellee.

ROBERTSON, C.J.—Penman appeals from his conviction for entering with intent to commit a felony.

We are asked to determine whether the evidence was sufficient to establish the elements of the offense and proper venue, and whether imposition of the prison sentence constituted cruel and unusual punishment.

We affirm the conviction.

The facts as viewed most favorably toward the State are as follows: Shortly after midnight on December 29, 1973, Robert Smith observed Penman throw a brick through the window of a poolroom at 545 Indiana Avenue in Indianapolis. Smith then observed Penman finish breaking the window with his cane. He left the scene to inform the poolroom's owner, Wes Manston, and the two men returned to the scene where they observed Penman leaning through the broken window attempting to pry open the coin box on a jukebox located near the window.

Manson approached Penman and detained him until an Indianapolis police officer arrived and made the arrest. Penman had been drinking, but the evidence was conflicting as to whether he was "drunk".

Penman was charged with second degree burglary. After a jury trial, he was convicted of the lesser included offense of entering to commit a felony and sentenced accordingly.

Penman first contends that the evidence was not sufficient on all elements of the offense.

The offense of entering with intent to commit a felony is provided for by IC 1971, 35-13-4-5, Ind. Ann. Stat. § 10-704:

"Whoever enters any . . . business house . . . with the intent to commit a felony therein, shall on conviction, be imprisoned for not less than [1] year nor more than ten [10] years. . . ."

The State had the burden of showing that Penman entered a business house with an intent to commit a felony. Penman argues on appeal that the evidence failed to establish the requisite elements of entry and intent.

Concerning the element of entry, Penman argues that the evidence did not show that he entered the building, but only that he leaned into the building through the window. Penman asserts that he could not be convicted of "entering" under these facts.

The crux of Penman's argument is that a person cannot be said to have "entered" a building until his entire person is within the boundaries of the structure. We do not agree with this statement of the law. A more accurate statement is that a person has entered a structure when he has essentially put himself in a position to commit a felony within the confines of the structure. While it is not sufficient to show that a defendant has placed a foot partially inside a door, [*Link* v. *State* (1953), 232 Ind. 466, 113 N.E.2d 43] or inserted an iron bar between the jam and the door, [*Mattox* v. *State* (1913), 179 Ind. 575, 101 N.E. 1009], a showing that defendant has leaned through a window to enable him to take money from a jukebox is sufficient to establish the element of entry.

Penman's next argument is that the State failed to prove that he had an intent to commit a felony within the poolroom. He asserts that he was incapable of forming the required intent due to his intoxicated condition.

Penman correctly points out that intoxication is a defense to a criminal charge when it can be shown that the condition left a defendant mentally incompetent to form a specific intent necessary for commission of the crime. *Davis* v. *State* (1968), 249 Ind. 373, 232 N.E.2d 867.

However, the degree of intoxication is a question of fact. This court is, therefore, limited to determining whether the evidence, taken most favorably to the State, supports a reasonable inference in favor of the judgment of the trial court. *Parsons* v. *State* (1973), 159 Ind. App. 160, 304 N.E.2d 802.

There was sufficient evidence adduced at trial to support the determination that Penman was capable of forming the requisite intent to commit the crime. Penman broke through a plate glass window by throwing a brick against it, and then used his cane to clear away the loose glass so that he would be able to lean into the room. Penman was apparently well in control of his faculties, as he was sufficiently co-ordinated to stand on the sidewalk outside the window, while reaching inside and forcibly opening the coin box. Two witnesses stated that Penman did not appear to be staggering at the time of his arrest shortly after the break-in. Further Officer Cotton testified that he had previously observed Penman while he was intoxicated, and that he did not appear intoxicated at the time of his arrest.

This evidence was sufficient to support the determination that Penman was not too intoxicated to form a criminal intent.

Penman next argues that the State failed to prove proper venue.

In Indiana a criminal defendant has a constitutional right to be tried in the county in which the crime was committed. Ind. Const. Art. 1, § 13. To sustain a conviction on appeal the record must show some evidence of proper venue. However, that evidence need not be any stronger than that required to establish any other essential fact. As stated in *Weaver* v. *State* (1963), 243 Ind. 560, 187 N.E.2d 485.

"Although it is better practice, if possible, to prove the venue by direct evidence, this cannot in all cases be done. It is not necessary that venue be proved by direct evidence established by questions and answers specifically naming the particular county and state in which the offense was

alleged to have been committed. It is sufficient if facts and circumstances are shown by the evidence from which the jury may find where the crime was committed." (Citations omitted.) 187 N.E.2d 487.

In the present case, it must be concluded that there is sufficient evidence from which the jury could have determined proper venue.

Robert Smith testified that he was residing and working in Marion County and that he, while walking to the Golden Nugget located in Marion County, saw Penman break the window of the poolroom. Mr. Smith also testified that the poolroom was located at 540 or 545 Indiana Avenue. Three photographs entered into evidence which were stamped with the identification "Indianapolis Police Department Bureau of Identification", and Exhibit #2 revealed that the poolroom was named the Indiana Billiard Parlor. Officer Cotton testified that he was working the late shift in his position as a police officer for the City of Indianapolis, and that he was working in the downtown area of Marion County when he was dispatched by radio to 545 Indiana Avenue.

The above evidence taken as a whole was sufficient to support the jury's finding of venue in this case.

Penman's final contention is that his conviction and sentencing constituted cruel and unusual punishment as proscribed by the United States Constitution.

Penman's contention is based upon a United States Supreme Court opinion which declared that a state could not make a condition or a status a criminal offense. *Robinson* v. *California* (1962), 370 U.S. 650. In *Robinson,* the Supreme Court held a statute making the status of drug addiction a criminal offense unconstitutional as inflicting cruel and unusual punishment.

Penman relies heavily on evidence in the record to the effect that he is an alcoholic and argues that as a result his punishment is actually the imposition of punishment for the status of being an alcoholic. We cannot agree. Penman was con-

victed of entering a business house with the intent of committing a felony. Alcoholism is certainly not an element of the offense created by the statute. *Robinson* v. *California, supra,* is of no relevance to the present case.

Penman's final argument is that his incarceration amounts to cruel and unusual punishment as to him because of his physical condition.

The record shows that Penman suffers from hypertension and an advanced case of cirrhosis of the liver, and that he has one wooden leg and requires a cane for walking. Penman asserts that he would not receive proper medical attention in prison and that he would be particularly vulnerable to attacks from fellow inmates.

Penman's argument in this regard is too conjectural to be of substance. We cannot, therefore, say that his imprisonment is cruel and unusual punishment.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.