Randall Gene **PERDUE**, Appellant
(Defendant Below),

v.

**STATE** of Indiana, Appellee
(Plaintiff Below).

No. 1-179A30.

Court of Appeals of Indiana,
Fourth District.

Dec. 26, 1979.

J. Lee McNeely, McNeely & Sanders, Mark W. McNeely, Shelbyville, for appellant.

Theodore L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

This is an appeal by Randall Gene Perdue from a jury verdict finding him guilty of First Degree Burglary.[1] He was sentenced to an indeterminate period of not less than ten years nor more than twenty years.

We affirm.

Perdue presents these issues for review:
1. Was there sufficient evidence of entry and intent to commit a felony?
2. Was it error for the trial court to deny Perdue the opportunity to inspect the scene of the crime in a timely manner?
3. Did the trial court err in admitting a photograph (State's Exhibit 22) into evidence over Perdue's objection?
4. Did the trial court err in refusing to give Perdue's tendered instructions 2, 3, 6, 7 and 8?
5. Was error committed when, during final argument, the prosecutor allegedly read and argued State's instructions three and five which the trial court had previously refused?

The facts most favorable to the State are as follows: At three o'clock in the morning of June 24, 1975, Perdue and his companion Dave Pettit parked Pettit's pick-up truck near John Hawk's house which was located in a Shelby County rural area. They wedged the storm door, splintered the frame and broke in the locked door of Hawk's residence, an unpainted one story farmhouse overgrown with weeds. Upon seeing the silhouettes of two people, Hawk shot at the figures, killing Pettit and wounding Perdue. Pettit was wearing brown cotton gloves. After the incident, a strange flashlight was found on the premises by Hawk. At about four o'clock on the same morning, Perdue knocked at the residence of Gaynelle Hite and asked for help because he had been shot. Hite lived approximately two miles from Hawk. Perdue told the police he had been shot and robbed by persons who had picked him up while he was hitchhiking. At six o'clock on the same morning, Hawk, who did not have a phone at his residence, called police from another location and told them he shot and killed one person who was breaking into his home and wounded another.

*Sufficiency of Evidence*

When the sufficiency of the evidence is questioned on appeal this Court will neither weigh the evidence nor judge

---

1. Ind.Code 35–13–4–4(a) provided:

Whoever breaks and enters into any dwelling-house or other place of human habitation with the intent to commit any felony therein, or *to do any act of violence or injury to any human being*, shall be guilty of burglary in the first degree, and on conviction thereof shall be imprisoned not less than ten (10) years nor more than twenty (20) years and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period. (Repealed effective October 1, 1977).

The Information, in part, charged:

"RANDALL GENE PERDUE did then and there unlawfully, feloniously and burglariously break and enter into the residence of John Hawk located at R.R. # 1, Morristown, Shelby County, Indiana, which residence was a place of human habitation, with the intent to commit a felony therein, to wit: Commit the crime of theft by knowingly, unlawfully and feloniously obtaining and exerting unauthorized control over the property of John Hawk, intending to deprive the owner, John Hawk, of the use and benefit of said property . . . ."

the credibility of witnesses. We will only determine if there is substantial evidence of probative value together with reasonable and logical inferences from which the jury could have found the defendant guilty beyond a reasonable doubt. *Cummings v. State* (1979), Ind., 384 N.E.2d 605; *Barnes v. State* (1978), Ind., 378 N.E.2d 839; *Jones v. State* (1978), Ind., 377 N.E.2d 1349. In exercising our appellate function we do not have to find circumstantial evidence "is adequate to overcome every reasonable hypothesis of innocence but only whether an inference may reasonably be drawn therefrom to support the finding of the trial court" (citations omitted), *Jones v. State, supra,* at 1351; *Cummings v. State, supra.*

A person "enters" within the meaning of the burglary statute when he puts himself in a position to commit a felony inside the structure. *Lee v. State* (1976), Ind.App., 349 N.E.2d 214 (Lee was found to have entered when one police officer testified he saw Lee's foot and shoulder inside the doorway). *Penman v. State* (1975), Ind. App., 325 N.E.2d 478 (Penman leaned through a broken window and attempted to take money from a jukebox). Here, although the evidence was conflicting, the jury could have inferred Perdue "entered" from the testimony of Sheriff Murnam and Hawk. Murnam testified he heard Perdue tell Pettit's parents "We thought the place was empty. We went inside and was [sic] just in there a little while and came outside and there was a man in the bushes". Hawks testified he could see dull silhouettes in the house. On cross examination he testified he thought they were inside.

The intent to commit a felony can be inferred from the time, force and manner of entry if there is no evidence that the entry was made with some lawful intent. *Lisenko v. State* (1976), 265 Ind. 488, 355 N.E.2d 841; *Sleck v. State* (1977), Ind.App.,

369 N.E.2d 963. *See Carter v. State* (1976), 265 Ind. 535, 356 N.E.2d 220.

In *Lisenko,* our Supreme Court stated at 842, 843 of 355 N.E.2d:

The Appellants' sufficiency arguments assert that the evidence in this case failed to establish the second element, intent. We do not agree. The evidence at trial established that entry to the building in question was effected by prying open a locked steel door at about 4:00 a. m. No employees of the business were present in the building. The Appellants offered no explanation for their presence. In the absence of evidence that this forced entry was made with some lawful intent, we think that the intent to commit a felony may be reasonably inferred from the time, force, and manner in which the entry here was made. In addition, the Appellants' statement to police that they "gave up" evidenced a consciousness of guilt from which the jury could further infer a felonious purpose. An inference of guilt may be drawn therefrom the same as if the Appellants had fled.

A person may be convicted of burglary if he breaks and enters with the intent to commit a felony even though he does not actually commit a theft or any other felony. *Elmore v. State* (1978), Ind., 382 N.E.2d 893.

Here, Perdue and his confederate splintered the door frame, broke in the locked door and entered Hawk's residence at three o'clock in the morning. They arrived in a pick-up truck which was parked near the house. Perdue's companion was wearing brown gloves in the middle of summer. A flashlight was discovered on the premises. When Perdue sought help, he lied about the circumstances surrounding his injury. The evidence was sufficient for the jury to infer Perdue had an intent to commit a felony in Hawk's home.[2]

---

2. Perdue asks us to find the evidence insufficient under *Castaneda v. State* (1978), Ind. App., 372 N.E.2d 1191. In that case, the majority applied the *Lisenko* test and under the facts therein found the jury could *not* infer an intent to steal Goodwill's property when all the evidence pointed to the fact that the intent was to

steal the property of the adjacent coin shop. A consideration of the evidence in the instant case leads inescapably to the conclusion that the only possible inference the jury could have drawn was that the Hawk's residence was the place wherein Perdue and Pettit intended to conduct their illegal activity.

*Delay in Inspection of Crime Scene*

Perdue was charged on June 27, 1975. On July 7, 1975 he filed a motion requesting an order to permit entry upon the land of John Hawk for the purpose of inspecting, measuring, surveying and photographing the scene of the alleged crime in preparation of his defense. The Motion contained the following request:

Defendant, Randall Perdue, by counsel respectfully requests the court to issue an Order permitting the defendant, through his Counsel, or someone acting on his behalf, to enter upon the land of the prosecuting witness, John Hawk, for the purpose of inspection, measuring, surveying and photographing the property for the purpose of the preparation of the defense in this cause.

There is nothing in the record showing Hawk was given notice of this motion, made a party to the proceedings, or subpoenaed. During the following sixteen and a half months numerous events transpired: namely, the trial court granted the Motion to Inspect; the Supreme Court appointed a special judge; the State moved the court to reconsider its original order permitting inspection and the original order was vacated; Perdue moved for a change of venue from the County which was granted; Perdue moved to reconsider his request to inspect the crime scene, and a Judge Pro Tem granted Perdue's Motion to inspect and ordered the Sheriff of Shelby County to facilitate the inspection.

Finally, on November 23, 1976, Perdue moved to dismiss the cause because he had never been allowed to inspect the land. In this motion he alleged neither the sheriff nor the prosecutor had complied with the court order. Further, he alleged that on June 25, 1976 his counsel had sent a letter to John Hawk asking him to allow inspection of the land and also that he sent a letter to the sheriff requesting that he make arrangements for such inspection pursuant to a court order. Neither letter is in the record nor is the motion verified. A hearing was held on the motion to dismiss on November 29, 1976. Hawk appeared. The evidence, if any, from this hearing is not in our record. The trial court then denied the motion to dismiss and, further, set aside the last order allowing inspection because of the failure of Perdue to follow Ind.Rules of Procedure, Trial Rule 34.

On February 22, 1977, Perdue finally filed what appears to be an appropriate motion pursuant to T.R. 34, requesting entry and inspection of Hawk's land and moving that Hawk be made a party to respond to the request. Hawk filed objections to the inspection and on July 22, 1977 the court overruled the objections and ordered Perdue be allowed to make his inspection. On August 18, 1977, Hawk attempted, by requesting a court order, to change the terms of the inspection but this attempt was denied by the trial court on September 10th, 1977.

Perdue claims that between September 19th and December 21st, he received no cooperation from the sheriff in making the inspection and therefore, on the latter date, requested the court order the sheriff to escort him to view the premises. The court immediately ordered the inspection. Apparently the view took place on January 5th, 1978.

We agree that, upon proper request by Perdue, it would have been error for the trial court in this instance to deny his request for inspection. But a proper request to a non-party must comport with T.R. 34[3] which provides in pertinent part:

(A) Scope. Any party may serve on any other party a request * * *

(2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or opera-

---

**3.** This rule was made applicable to criminal proceedings by Ind.Rule of Procedure, Criminal Rule 21.

tion thereon, within the scope of Rule 26(B).

\* \* \* \* \* \*

(C) Application to non-parties. A witness or person other than a party may be requested to produce or permit the matters allowed by subdivision (A) of this rule. Such request shall be served upon other parties and included in or with a subpoena served upon such witness or person. The request shall contain the matter provided in subdivision (B) of this rule. It shall also state that the witness or person to whom it is directed is entitled to security against damages or payment of damages resulting from such request and may respond to such request by submitting to its terms, by proposing different terms, by objecting specifically or generally to the request by serving a written response to the party making the request within thirty [30] days, or by moving to quash as permitted by Rule 45(B). Any party, witness or person upon whom the request properly is made may respond to the request as provided in subdivision (B) of this rule. If the response of the witness or person to whom it is directed is unfavorable, if he moves to quash, if he refuses to cooperate after responding or fails to respond, or if he objects, the party making the request may move for an order under Rule 37(A) with respect to any such response or objection. In granting an order under this subdivision and Rule 37(A)(2) the court shall condition relief upon the prepayment of damages to be proximately incurred by the witness or person to whom the request is directed or require an adequate surety bond or other indemnity conditioned against such damages. Such damages shall include reasonable attorneys' fees incurred in reasonable resistance and in establishing such threatened damage or damages. •

■ We also observe that if a defendant in a criminal action believes the State has not complied with a discovery order, it is mandatory for him to call this to the attention of the trial court and attempt to com-pel the State to comply with the order. Otherwise, error resulting from non-compliance is waived. *Dillard v. State* (1971), 257 Ind. 282, 274 N.E.2d 387.

It was not until February 22, 1977, some nineteen and one-half months after his original inspection request, that Perdue filed a motion which comported with the requirements of T.R. 34. The trial court granted this motion. From that time until the entry on the land was ultimately made, Hawk was claiming his rights under T.R. 34(C). Immediately upon it being called to the attention of the trial court that Hawk was not obeying the court order, the court did order the discovery to take place.

■ We recognize the prosecutor has certain duties with respect to disclosure of evidence. *U. S. v. Agurs* (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342; *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; *Richard v. State* (1978), Ind., 382 N.E.2d 899. However, we do not believe the action of the prosecutor in filing a motion to reconsider the grant of a motion which did not comply with T.R. 34(C) amounted to the suppression of evidence. Obviously, had Perdue made a proper request, had Hawk been aware of the request and had Hawk allowed Perdue on the land the prosecutor would not necessarily have been involved at all. In fact, we believe, in the interest of fair play the prosecutor should encourage the third party to allow the defendant's representative upon the land as soon as possible. Were there evidence that, after a proper motion for inspection, the prosecutor had, for no good reason, discouraged Hawk from allowing Perdue on the land we would seriously consider a claim of suppression of evidence. Since the long delay before inspection was the fault of Perdue, his claimed error on this issue must fail.

*Admission of State's Exhibit 22*

State's Exhibit 22 was a photograph of a cornfield fronted by a fence with a glove hanging on the fence. Mike Herndon, a detective with the Shelby County Sheriff's Department, testified that he followed a

path from the crime scene delineated by "mashed down" grass and broken limbs until it joined County Road One Thousand North. Across the road, he found the weeds "mashed down", a brown cotton glove hanging on the top of the fence and the weeds mashed down and a heel mark on the other side of the fence. He then followed a path through and to the west end of the cornfield until it came back to the road. There were drops of blood on some leaves of corn. Herndon testified the picture was a fair and accurate representation of the area as he viewed it on June 24, 1975. Perdue objected to the admission of the photograph because there was no nexus established between Perdue and the glove. On appeal, he argues the admission was improper because the glove was not connected to Perdue.

The admission of a photograph is within the sound discretion of the trial court, *Hubble v. State* (1973), 260 Ind. 655, 299 N.E.2d 612; *Hancock v. State* (1976), Ind.App., 345 N.E.2d 244. It is not an abuse of discretion for the court to admit a photograph which depicts only what is revealed by testimony to which the defendant did not object. Therefore, any objection goes to the weight rather than admissibility. *Hancock v. State, supra.*

*Refusal of Perdue's Tendered Instructions 2, 3, 6, 7 and 8*

In *Morris v. State* (1979), Ind., 394 N.E.2d 151, our Supreme Court recently reiterated the rule governing this Court's consideration of whether the trial court erred in refusing to give an instruction when it quoted *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836, as follows:

> In considering whether any error results from refusal of a tendered instruction we must determine: (1) whether the tendered instruction correctly states the law . . . (2) whether there is evidence in the record to support the giving of the instruction . . . (3) whether the substance of the tendered instruction is covered by other instructions which are given . . . (Citations omitted.) 265 Ind. at 478, 355 N.E.2d at 838.

Further a trial court should not give an instruction which is not relevant to the issues which the jury must decide in reaching its verdict. *Debose v. State* (1979), Ind., 389 N.E.2d 272.

Although the State indicates that the refused instructions were incorrect statements of the law, it does not indicate in what manner it believes them to be incorrect. We therefore will consider these instructions as correctly stating the law.

For purposes of discussion, Perdue's tendered instruction 2 must be divided into three parts, "A", "B" and "C". Part A states each distinct element of the crime must be proved in order to sustain a conviction. Part B refers specifically to entry and intent and says in essence that they must be proved beyond a reasonable doubt. We find that these parts of Perdue's instruction 2 were adequately covered by the court's instruction 5 which provided that the State must prove each and every material allegation beyond a reasonable doubt, and, if the State fails to prove any one allegation of the information, then the defendant must be found not guilty. Part C defines the standard which must be applied in order to find the defendant guilty when the evidence is wholly circumstantial. We find that Part C was covered by the court's instruction 11 on circumstantial evidence.

Perdue's tendered instruction 3 is substantially the same as his tendered instruction 2, parts "A" and "B". Therefore we find it was adequately covered by court instruction 5.

Perdue's tendered instruction 6 states in essence that the State must prove active conduct on the part of Perdue in order for the jury to find him guilty of any crime. We find this instruction was covered by the court when it gave Perdue's tendered instruction 5 which provides "negative acquiescence" is not enough to find Perdue guilty of aiding and abetting.

Defendant's tendered instruction 7 concerns the defense of abandonment. He claims in his brief:

The defense of abandonment is applicable to the situation at hand. If we are confronted with the Sheriff's statement that the defendant said he "went inside" the house on the issue of entry, then it is proper for the defense to argue that the surrounding statements that "we thought the place was empty" and he "came outside" show lack of intent or abandonment.

Here, the crime was complete at the time a defendant broke and entered with the intent to commit a felony. *Elmore v. State* (1978), Ind., 382 N.E.2d 893. Consequently, whether the accused "abandoned" the crime, that is, "came outside" after he entered, was not material to his guilt or innocence. The instruction was properly refused.

■ Perdue's tendered instruction 8, although inartfully drawn, is essentially an instruction on self defense. Self defense is not a defense to this crime. The instruction was irrelevant. Perdue contends he tendered this instruction because it relates to the question of why he fled and also his intent. Assuming, arguendo, that this were Perdue's purpose, the court properly refused the instruction because it was covered by Perdue's instruction 9 which provided that a defendant may justifiably flee when he is in fear of bodily injury to himself or others.

*Prosecutor's Reference To Refused Instructions During Final Argument*

■ During final argument it is not error for the prosecutor to read a court instruction, *Morris v. State* (1979), Ind., 384 N.E.2d 1022, to read from reported cases *Hubbard v. State* (1974), 262 Ind. 176, 313 N.E.2d 346; *Kilgore v. State* (1976), Ind. App., 354 N.E.2d 254; *Klepfer v. State* (1890), 121 Ind. 491, 23 N.E. 287, or to argue the law. *Horn v. State* (1978), Ind.App., 376 N.E.2d 512; *Kilgore v. State, supra.* If the defendant fails to object to the prosecutor's closing remarks and does not request the court to admonish the jury to disregard the remarks, he waives any error resulting from said remarks. *Bradburn v. State* (1971), 256 Ind. 453, 269 N.E.2d 539; *Holland v. State* (1976), Ind.App., 356 N.E.2d 686.

■ First we note Perdue waived any error by failing to object to the prosecutor's statements at the time he made them. However we believe there was no error in the prosecutor's closing argument. Perdue does not contend and we do not find that either of the refused instructions misstated the law or were irrelevant. Since the prosecutor can argue the law, it was not improper for the prosecutor to state the legal principles therein.

As to State's instruction 3, the record discloses that the court refused the instruction because the matters were covered by its own instruction. Court instruction 19 was almost identical to State's instruction 3. There is no merit to Perdue's contention that the prosecutor was even reading its refused instruction. It appears to us that he was reading the Court's instruction and this was not error.

There was also no merit to Perdue's contention that the prosecutor was reading State's instruction five which the Court refused. It is obvious the prosecutor was reading a portion of *Lee v. State, supra* which quoted *Penman v. State, supra* and not reading the refused instruction 5. In fact, we note that Perdue's counsel encouraged the prosecutor to read that portion of the case.

The judgment is affirmed.

CHIPMAN and YOUNG, JJ., concur.