**Randall SLUSS, Respondent-Appellant,**

v.

**STATE of Indiana, Petitioner-Appellee.**

**No. 1–282A41.**

Court of Appeals of Indiana,
First District.

June 29, 1982.

Robert W. Beck, Monroe County Public Defender, Bloomington, for respondent-appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for petitioner-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Respondent-appellant Randall Sluss (Sluss) appeals from an order entered in the Monroe Circuit Court—Juvenile Division which found that Sluss did break and enter into the dwelling of Frank Foulks (Foulks) with the intent to commit the felony of battery upon Foulks with a deadly weapon, that being a club. Upon such finding, Sluss was adjudged a delinquent child by the trial court.

We reverse.

## STATEMENT OF THE FACTS

The evidence most favorable to the State discloses that on April 28, 1981, Sluss, age 17, walked through the open front door of Foulks's house and sat down and talked to Foulks for several minutes. Sluss, who was acquainted with Foulks, then made "several kinds of vague threats" and Foulks asked him to leave, which Sluss did. A few minutes later, Foulks heard a noise at the back door, and, upon inspection, he observed Sluss standing in front of the back door holding a knife. Foulks testified: "I asked him what he wanted and he said nothing and appeared to walk away." A few minutes later Foulks found Sluss wandering around the house outside and looking at the windows. Foulks testified, "I went outside and asked him what he was doing. He said that he had lost something." Foulks then went inside and called the police. While waiting for the police to arrive, Foulks intermittently observed Sluss walking around the outside of the house. He then observed Sluss running away from the house, upon which Foulks discovered his back door open and the door's windowpane broken out. Foulks testified:

"I went back into the house and I called the police again. And, then I continued waiting and I continued to look out the windows of the house and I, after a while I didn't see Randy anymore so I went outside and began to circle the house clockwise from the west side to the north and then to the east side. When I came, turned the corner to the east side of the house I saw Randy standing at the back door with a knife apparently performing some operation on the lock of the door with the knife. And, when he saw me he just walked away without saying anything. I started to walk away. I went

around the front of the house and at that point I saw the police car that had come. The officers were already out of the car and then they were approaching the area on the south side of the house and I said there he is, there he is. Randy began to run and we pursued him."

Foulks admitted that the back door window previously was cracked and he didn't know whether it was broken out while Sluss was wandering around the outside of his house that day. Foulks testified he never heard the window break and Sluss was not always in his constant view. Foulks never observed Sluss carrying a club or threaten to attack him with a club. Foulks also testified that Sluss never touched him.

The police chased after Sluss and found him hiding in an evergreen tree. After properly reading Sluss his constitutional rights at the Bloomington Police Department, Sluss made a statement to officer John Coleman of the Bloomington Police Department who testified that Sluss stated:

". . . that Mr. Foulks had made a pass at him and he got mad and left. And, he said that he went outside and that he got a club and he decided to go in the house and hit Mr. Foulks. And, that, he said that the basement window was already broken out but that he did reach in and unlock it and go into that portion of the house but that the door leading to the living quarters was locked. And, that he couldn't actually get into the house."

Thereafter, a petition alleging delinquency was filed, it charged that Sluss had committed an act that would be a crime if committed by an adult, to-wit: burglary with the intent to commit battery with a deadly weapon, to-wit: a club. Upon the above stated facts, the juvenile referee of the Monroe Circuit Court found that Sluss had committed the alleged act and adjudged him a delinquent child. The Monroe Circuit Court approved the referee's findings and order on July 31, 1981.

## ISSUES

Sluss raises the following three issues for review:

I. Did the Referee err in admitting Respondent's statement without proof of the corpus delicti of the charged offense?

II. Did the Referee err in overruling Respondent's motion to strike respondent's statement at the close of the State's evidence in this cause because the State of Indiana failed to prove the corpus delicti of the charged offense?

III. Did the Court err in adjudicating the Respondent delinquent because, without Respondent's statement, there is insufficient evidence to find him delinquent and is, therefore, contrary to law?

## DISCUSSION AND DECISION

The determinative question, as the parties agree, is whether the State introduced independent evidence of the *corpus delicti* to justify the admission of Sluss' out-of-court statement. Therefore, we shall treat the above stated issues as one argument.

Sluss argues the State failed to prove the *corpus delicti* of the charged offense, there being no evidence from which an entry or an intent to commit battery with a deadly weapon can be inferred, citing as authority *Cambron v. State*, (1975) 262 Ind. 660, 322 N.E.2d 712.

The Indiana Supreme Court in *Cambron, supra*, at 665–66, 322 N.E.2d 712, in discussing the need for the State to introduce independent evidence of the specific crime charged to support an admission or confession, stated:

"In order to avoid the risk of convicting someone for a crime which he confessed, but which never occurred, a confession must be excluded, unless the State introduces corroborating evidence concerning the corpus delicti. *Parker v. State* (1949), 228 Ind. 1, 88 N.E.2d 556. The corpus delicti is variously defined. To establish the corpus delicti for the purpose of admitting into evidence a confession, this Court has required independent evidence of (1) the occurrence of the specific kind

of injury (in homicide, a person deceased), and (2) somebody's criminal act as the cause of the injury (in homicide, that the death was caused by the unlawful conduct of another person). *Parker, supra; Simmons v. State* (1955), 234 Ind. 489, 129 N.E.2d 121. The evidence establishing the corpus delicti may be circumstantial, as for any other material fact that must be proved. *Messel v. State* (1911), 176 Ind. 214, [95 N.E. 565]. In the case at bar, the police and the doctor presented evidence that Baumgartner had died from the effects of repeated blows to the head with a meat tenderizer.

Most Indiana cases speak of the corpus delicti as the 'specific crime charged', or 'the crime' or, *e.g.*, 'the rape'. *Parker*, 228 Ind. at 6, [88 N.E.2d 556]; *Messel*, 176 Ind. at 217, 95 N.E. 565. These cases may require that the State introduce some independent evidence of each of the elements of the crime in order to establish the corpus delicti." (Citation omitted.)

■ A burglary is committed when a break and entry is effected with the intent to commit a felony. *Jones v. State*, (1981) Ind.App., 421 N.E.2d 15. The elements of burglary can be proved by circumstantial evidence alone. *Eaton v. State*, (1980) Ind. 408 N.E.2d 1281. However, the offense of burglary is not committed unless the accused breaks *and* enters. *Link v. State*, (1953) 232 Ind. 466, 113 N.E.2d 43.

■ It is desirable to first establish the *corpus delicti* before showing a confession or statement against interest by the defendant, but such is not necessary; the matter of order of proof is within the sound discretion of the trial court. *Lee v. State*, (1976) 169 Ind.App. 470, 349 N.E.2d 214. Specifically, in order to establish the *corpus delicti* of burglary, it is necessary to show a breaking *and* entering into a dwelling house of another with an intent to commit a felony therein. *Berry v. State*, (1972) 153 Ind. App. 387, 287 N.E.2d 557. A person has "entered" a structure of another when he has essentially put himself in a position to commit a felony within the confines of the structure. *Cissna v. State*, (1976) 170 Ind.

App. 437, 352 N.E.2d 793. *Lee, supra; Penman v. State*, (1975) 163 Ind.App. 583, 325 N.E.2d 478. It is not necessary to show forcible entry, only that some physical act was used to gain entry. *Gooch v. State*, (1975) 165 Ind.App. 162, 331 N.E.2d 467.

■ While the State concedes a confession is inadmissible without independent proof of the *corpus delicti*, evidence which shows that the specific crime charged was committed by someone, the State maintains that the evidence shows breaking and entering by Sluss who was seen running away from Foulk's house shortly before Foulks discovered the back door wide open with its window broken out. The Indiana Supreme Court, in *White v. State*, (1948) 226 Ind. 309, 311, 79 N.E.2d 771, stated:

"It has been held that where reliance is placed on circumstantial evidence, that evidence must be so conclusive in character that it excludes every reasonable hypothesis of the innocence of the accused. It likewise has been held that the above rule is for the guidance of the trial court, and on appeal it is not the duty of this court to weigh the evidence but merely to examine the evidence with a view to determine whether or not there was sufficient evidence to support the verdict of guilty on each of the several elements of the indictment or affidavit." (Citations omitted.)

In every Indiana case that we have examined, proof of entry requires *some evidence* of the defendant's *presence inside* the dwelling or structure of another person. *Davis v. State*, (1968) 251 Ind. 133, 239 N.E.2d 601; *Walker v. State*, (1975) 166 Ind.App. 286, 335 N.E.2d 834; *Tinsley v. State*, (1975) 164 Ind.App. 683, 330 N.E.2d 399; *Penman, supra; Christian v. State*, (1975) 163 Ind.App. 237, 323 N.E.2d 253; *Gorbett v. State*, (1974) 162 Ind.App. 164, 318 N.E.2d 592; *Cabell v. State*, (1974) 160 Ind.App. 406, 312 N.E.2d 142; and *Farno v. State*, (1974) 159 Ind.App. 627, 308 N.E.2d 724.

■ In the case at bar, the evidence most favorable to the trial court shows Sluss first

entered Foulk's house through an open front door, sat down and talked to Foulks for a few minutes. After making some "vague threats" against Foulks and being asked by Foulks to leave, Sluss walked out of the house. Foulks next heard a noise outside and, upon investigating, discovered Sluss standing in front of the back door "performing some operation on the lock of the door with the knife." Foulks and Sluss stood beside one another in the back yard of the house and Foulks asked Sluss what he was doing. Sluss responded by silently walking away. At another instant, Foulks discovered his back door open and the window pane in it broken, but Sluss was not present. At best, we can infer a breaking from this evidence; however, there is absolutely no evidence to infer that Sluss actually entered into Foulks' house by way of the open back door.[1]

■ The evidence is devoid of any proof from which we may reasonably infer that an entry after a breaking took place. In fact, Foulks even admitted that he never saw Sluss inside the back door which he found open, nor did Foulks hear the door windowpane break. Foulks further testified that he was uncertain whether the window was broken while Sluss was present or at another time. We also would note, as Sluss pointed out at the fact finding hearing and in his brief, that there is a complete failure of proof of a club, the instrument with which Sluss was charged as having intended to commit a battery upon Foulks.[2] Foulks testified Sluss never touched him and Foulks never saw a club or club-like object in Sluss' possession. Foulks never heard Sluss threaten him with a club either. The evidence shows Sluss, had he so intended, had ample opportunity to demonstrate an intent to commit battery upon Foulks while sitting in his living room and while standing beside him at the back door. In neither setting did Sluss intimate an intention to commit battery. Furthermore, the only conceivable deadly weapon, the pocket knife, was used to tinker with a door lock. We cannot infer from such testimony that Sluss intended to commit battery upon Foulks with a deadly weapon. A defendant's intent to commit a felony may be inferred from circumstances surrounding his entry into a structure, *Lee, supra*; however, in the case at bar, there was no evidence of entry at all, an essential element of burglary. In *Mattox v. State*, (1913) 179 Ind. 575, 101 N.E. 1009, evidence showing an attempt to pry open a door of a place of business, the approach of an officer, and the flight of the accused, was insufficient to show burglary or a felonious breaking and entering with an intent to commit a felony.

■ The State has entirely failed in its burden of proof, it has failed to present substantial evidence of probative value from which we can infer the commission of the crime of burglary. Therefore, the admission of Sluss' statement was error and it should have been stricken from the record upon the timely filing of Sluss' motion.

For the foregoing reasons, the judgment of the trial court is reversed.

Judgment reversed.

RATLIFF, P. J., and ROBERTSON, J., concur.

---

1. Sluss earlier had entered through the front door which was standing open; however, in that instance, there was no evidence of breaking whatsoever.

2. We shall not discuss the variance problem arising from the State's having charged that Sluss intended to commit battery with a club where the State has relied solely on evidence of a pocket knife to support the inference of an intent to commit battery with a deadly weapon.