Kenneth D. EVANS, Ricky L. Thomas, Appellants,

v.

STATE of Indiana, Appellee.

No. 4-183A5—384S77.

Supreme Court of Indiana.

March 5, 1984.

John Wissner, Scales, Wissner & Krantz, Boonville, for appellants.

Linley E. Pearson, Atty. Gen. of Indiana, Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

CRIMINAL PETITION FOR TRANSFER

GIVAN, Chief Justice.

A jury convicted appellants Evans and Thomas for Theft, a class D felony, IC § 35–43–4–2 [Burns Supp.1983]. Evans was sentenced to two (2) years executed, and Thomas to two (2) years with four (4) months executed. The Court of Appeals reversed appellants' convictions after finding the jury verdict was unsupported by the evidence. The State's Petition for Transfer is granted. The opinion of the Court of Appeals reported at 455 N.E.2d 1157 is vacated.

The facts are these: On December 1, 1981, at approximately 9:30 P.M., John St. Clair, an employee of Peabody Coal Company (Peabody), drove the road grader he was operating to one of the fuel stations located on company property to fill the grader's fuel tanks. While approaching the station, he discovered a rust colored van parked next to the station's 10,000 gallon fuel tank.

He pulled up behind the van, stopped the grader and waited for a few moments until the van drove away. As the van moved away from the fuel tank, the tank's service hose fell to the ground. St. Clair could not say if the hose had fallen from the tank or the van. He said he had followed the van a short distance in his grader, along one of the mine's roads, when the van came to a halt. One of the occupants exited from the passenger's side of the vehicle. St. Clair then backed his grader away from the van.

Another Peabody employee, Larry Randberger, came along and St. Clair told him what he had observed. As he was talking with Randberger, the van drove back toward them and then drove away. Randberger radioed St. Clair's report to his supervisor, James Irwin, who was informed of the description of the van and the general direction in which it was travelling. Irwin waited on a county road for the van to pass his location as it exited the mine property. When the van went by, he followed it into Lynnville, Indiana, in his company truck. Irwin radioed his main office to have them contact the police for him. Irwin followed the van to a residence in Lynnville and pulled his truck about one half block down Main Street to take up an inconspicuous vantage point from which he could observe the van. Irwin testified that he had seen two occupants in the vehicle as it first passed him on the county road. As he was observing the van at the Lynnville residence, he saw two people emerge from the vehicle.

When police arrived in Lynnville, they met Irwin on Main Street at which time he told them of the van's location. Police then went to Evans' residence where they saw Evans and Thomas pouring fuel oil from a fifty-five (55) gallon drum into a hose that led into the house. As the police arrived,

Evans and Thomas set the drum down. One of appellants started to enter the house, and the other headed toward the rear of the house. Officers ordered them to halt and read each of them their *Miranda* warnings.

After being advised of their rights, appellants were questioned by police at the scene. Upon being asked where he had obtained the fuel oil, Evans told one officer that he had purchased it at Heck's Texaco in Boonville from an older man with a limp. At trial, this statement was admitted over appellants' objection. The State's witness, David Smith, testified that on December 1, 1981, he was the only employee working at Heck's Texaco who walked with a limp. He also stated he did not remember selling any fuel oil that evening to anyone, including appellants, and that he did not sell any fuel oil to anyone who took it from the station in a fifty-five (55) gallon drum.

While being questioned in the driveway of the Evans residence, Thomas made a statement to the effect that he had just arrived at the house shortly before the police. Police noted that the hood of Thomas's car was cold to the touch and judged the car had been parked in the driveway for some period of time greater than what Thomas claimed. Thomas's statement was also admitted over appellants' objection.

Appellants assert the trial court erred by admitting into evidence Evans' statement concerning his source of the fuel oil prior to the State's establishing the *corpus delicti* by clear proof independent of the statement.

■ The rule is that although "[i]t is desirable to first establish the *corpus delicti* before showing a confession or statement against interest by the defendant, ... such is not necessary; the matter of order of proof is within the sound discretion of the trial court." *Sluss v. State*, (1982) Ind. App., 436 N.E.2d 907, 910; *Cambron v. State*, (1975) 262 Ind. 660, 322 N.E.2d 712; *Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798. Circumstantial evidence alone may establish the *corpus delicti. Perkins v. State*, (1979) 181 Ind.App. 461, 392

N.E.2d 490; *Dunbar v. State*, (1961) 242 Ind. 161, 177 N.E.2d 452. The *corpus delicti* need not be proven beyond a reasonable doubt. *Jackson v. State*, (1970) 255 Ind. 289, 263 N.E.2d 649.

■ Therefore, if the totality of the evidence presented at trial establishes the crime charged in the information or indictment was committed, a defendant's extrajudicial statements are admissible, even though they were admitted prior to proving the existence of the *corpus delicti.*

The area surrounding the Peabody fuel tank was muddy on December 1, 1981. The police noted the van had a fair amount of mud inside it, that Thomas had mud and a substance appearing to be fuel oil on his boots, and that both appellants had mud on their clothing. They could not say whether the mud in the van and on appellants' clothing had come from the area around the fuel station on Peabody property.

The Peabody fuel tank had a hose at each end and pumps which were operated by a diesel engine. The pumps had gauges to indicate how much oil was being removed from the tank as company equipment was being filled. However, the tank itself had no gauge to indicate with any specificity the actual volume of fuel oil in the tank at any given time. Employees measured the fuel level in the tank with a stick when necessary. Under certain circumstances, the tank would gravity feed, allowing fuel to be removed from the tank without the aid of the diesel engine.

This Court said in *Rosenberg v. State*, (1922) 192 Ind. 485, 489, 134 N.E. 856, 857:

"To support a conviction there must be evidence that the property in question was actually stolen. The *corpus delicti* in larceny, like other facts in general, may be established by circumstantial evidence. While the unexplained possession by one person of the goods of another is not of itself sufficient to prove that a larceny has been committed, yet such fact in connection with the other circumstances may be sufficient for that purpose."

St. Clair never actually saw appellants remove fuel oil from the tank, or heard the diesel engine running. None of the State's witnesses could say with certainty that any fuel oil was missing from the fuel tank. State's witnesses testified that it would be difficult to ascertain under the circumstances whether any fuel oil had been stolen from the tank on the night of December 1, 1981. Appellants therefore assert the *corpus delicti* was thus never established, making Evans' statement inadmissible, and also that the evidence is insufficient to sustain their convictions since the fact that there had been an actual taking of the fuel oil had not been proven.

 The Court of Appeals, relying on *Dudley v. State*, (1960) 241 Ind. 201, 165 N.E.2d 380, determined the jury could not reasonably infer that the fuel oil found in appellants' possession had been taken from Peabody's fuel tank because (1) the State could not prove precisely how much fuel oil had been removed from the tank, and (2) the State offered no evidence the fuel oil found was the same type as that in the Peabody fuel tank. We hold the Court of Appeals erred in this regard.

In the case at bar the jury was persuaded by the evidence that the fuel oil found in the possession of appellants belonged to Peabody, and that appellants had taken same from Peabody with the intent to deprive the company of its use. The evidence in the record demonstrates more than appellants' mere presence at the scene or opportunity to commit the alleged offense. The record discloses appellants were present on Peabody property late at night without authorization. Their van was discovered near the company fuel station. As they left the scene the fuel tank hose fell to the ground. A company employee followed appellants directly to their destination where police found them emptying fuel oil from a drum. When they saw police arriving, both attempted to withdraw from the scene and to conceal themselves. Both appellants gave false statements in explanation of their conduct at the scene, although they were under no compulsion to explain their activities.

From the circumstantial evidence at trial, the trier of fact could reasonably infer that appellants did indeed remove the fuel oil from the company's fuel tank and transport that oil to Evans' house. *Sansom v. State*, (1977) 267 Ind. 33, 366 N.E.2d 1171; *Wilkins v. State*, (1981) Ind.App., 426 N.E.2d 61. The Court of Appeals therefore erred by engaging in a reweighing of the evidence, thus invading the province of the jury as a fact finder.

The opinion of the Court of Appeals is vacated. The trial court is affirmed, and this cause is remanded for execution of the sentences imposed by the trial judge.

All Justices concur.