Adam **JORDAN**, Appellant
(Defendant below),

v.

**STATE of Indiana, Appellee**
(Plaintiff below).

No. 485S164.

Supreme Court of Indiana.

July 28, 1987.

Diane McNeal, Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Adam Jordan was found guilty by jury of theft, a class D felony, and found to be an habitual offender. He was sentenced on November 15, 1984 to thirty-three (33) years imprisonment. He directly appeals, raising the following issues for our review:

1. whether his confession was voluntarily given;

2. whether there was sufficient corroborating evidence of the *corpus delicti* of the offense to warrant the introduction of his confession;

3. whether the verdict is sustained by sufficient evidence;

4. habitual offender finding.

The facts show that at 11:58 p.m., on July 14, 1980, Officer Ron DiMichelle of the East Chicago Police Department was dispatched on a theft call to the James Hunter Senior Citizens' Building in East Chicago. When he arrived, an older couple pointed in the direction of a parked car, to indicate where Jordan was. Officer DiMichelle observed Jordan attempting to slide underneath a green 1969 Buick and ordered him to come out. He then handcuffed and arrested Jordan. Eight aluminum windows were near the rear entrance to the building, about twenty feet away.

The next morning, Detective Craig Love met with Charles Lazzaro, owner of the Lazzaro Glass Company which had the window replacement contract on the building. Lazzaro identified the windows as property of his company. He stated that the windows had been stored on the appropriate floors of the building when they were delivered in June. It was unlikely they had been moved by his people. No one had been given permission to remove the windows.

Detective Love then interviewed Jordan. At 10:00 a.m., he advised Jordan of his rights, but did not take a statement as Jordan claimed he knew nothing about the theft. At approximately 12:00 noon, Detective Love interviewed Jordan again. He again read Jordan his rights. Jordan then signed a rights waiver form and gave a written statement detailing his involvement in the theft.

## I

Jordan first argues the trial court erred in admitting his confession, over a Motion to Suppress, alleging the confession was not intelligently, knowingly and voluntarily given. Jordan contends his confession was not the product of free will in that (1) his thought processes were materially affected by the fear of the onset of withdrawal symptoms, and (2) Detective Love was aware of his drug addiction and used Jordan's fear of the onset of withdrawal symptoms to coerce him into giving a statement before receiving treatment.

At the suppression hearing, Jordan testified he became addicted to methadone in the summer of 1980. He stated he had received his last dose of methadone on either July 13 or 14. He began to feel sick on July 15, the morning after he was arrested. Dr. Alfonso Holliday, an expert witness, stated a typical methadone addict goes into withdrawal after approximately 24–36 hours without the drug.

The admissibility of a confession ultimately depends on questions of fact which are to be resolved by the trier of fact. *McKinney v. State* (1986), Ind., 496 N.E.2d 61, 62. The standard for appellate review

of admissibility of a confession is the same as any other fact finding issue. We do not weigh the evidence, but rather determine whether there was substantial probative evidence to support the trial court's finding. *Phillips v. State* (1981), Ind., 425 N.E.2d 119, 120. We will not disturb a trial court's ruling on the admissibility of a confession when such ruling is based on substantial, though conflicting, evidence. *Phillips*, 425 N.E.2d at 120. If the evidence is conflicting, only that evidence which tends to support the trial court's ruling will be considered on appeal. It is for the trier of fact to resolve conflicts on the voluntariness of the confession and the reviewing court is bound by the trial court's resolution. *McKinney*, 496 N.E.2d at 62.

■ The State has the burden to prove beyond a reasonable doubt that the confession was voluntarily given. In considering whether this burden has been met, we look at the totality of the circumstances to determine whether there have been any inducements by way of violence, threats, promises or other improper influences. *Heald v. State* (1986), Ind., 492 N.E.2d 671, 677. The basic requirement for admitting the defendant's statements made to police during a custodial interrogation is that such statement must have been voluntarily made as the product of a rational intellect and a free will, without compulsion or inducement of any sort serving to overbear the will of the accused. *Ferry v. State* (1983), Ind., 453 N.E.2d 207, 210.

The record shows that Detective Love advised Jordan of his *Miranda* rights and read the waiver form to him. Detective Love testified that Jordan appeared to read the form and to understand it. Jordan filled out the top portion of the waiver form, signed it, signed the typed statement, and initialed each page of the statement. Jordan never requested an attorney or said he did not want to talk. He did not complain of pain and did not appear to be suffering from withdrawal symptoms. Jordan stated he knew he did not have to talk to Detective Love and could have asked for a lawyer but he did not think he

would be charged after giving the statement. He said he was trying to do something to get out of there without the police having a case against him, but that Detective Love was determined to make a case against him. He said Love made changes in the statement three or four times and Jordan initialed the changes.

■ The totality of the circumstances here supports the trial court's determination of voluntariness. The rights waiver form and typed statement were signed. Jordan was alert enough to fill out the top part of the form and to be aware of the manner in which his statement was being taken down in regard to implicating or exculpating himself. Jordan was alert enough to claim the typist was typing something he did not agree with and felt was incorrect. He insisted the statement be changed. He was also alert enough to change his story in the second meeting with Officer Love. He does not claim he told Officer Love he was in pain and unable to continue with the statement. Further, Jordan was not held for an unreasonable amount of time before a statement was signed. Jordan did not request to terminate the statement. He was advised of all constitutional rights and did not request an attorney.

The proof presented supports the conclusion that Jordan's confession was voluntarily made. There is on the one hand conduct in the absence of any evidence of extended questioning, threats or intimidation, and on the other hand some pain and anxiety due to the circumstances including the fear of the onset of withdrawal symptoms without medication and the natural desire to move the processes along. On balance the evidence supports the admissibility of the confession. There is substantial probative evidence in the record to support the trial court's ruling on voluntariness and the court's finding should not be disturbed.

## II

Jordan next contends the State failed to produce independent corroborating evidence of the *corpus delicti* of the offense to warrant the introduction of his confession. Jordan argues the State did not present any evidence, independent of his confession, which established he had exerted unauthorized control of the windows, with the intent to deprive the owner of their value, and thus, admission of the confession is reversible error.

In *Douglas v. State* (1985), Ind., 481 N.E.2d 107, this Court held:

> To establish the *corpus delicti* for the purpose of admitting into evidence a confession, this Court has required independent evidence of (1) the occurrence of the specific kind of injury and (2) somebody's criminal act as the cause of the injury. *Cambron v. State* (1975), 262 Ind. 660, 322 N.E.2d 712. ... Independent evidence from which an inference may be drawn that a crime was committed is sufficient to show *corpus delicti. Jones v. State* (1969), 253 Ind. 235, 252 N.E.2d 572. Moreover, the State is not required to prove the *corpus delicti* by independent evidence prior to the admission of a confession, provided the totality of independent evidence presented at trial established it.

*Douglas,* 481 N.E.2d at 110. The totality of independent evidence presented by the State must therefore establish that someone knowingly or intentionally exerted unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use. Ind.Code Ann. § 35–43–4–2 (Burns Supp. 1986).

■ The State offered the testimony of Officer DiMichelle who, on arrival, observed two individuals pointing to Jordan. He observed Jordan attempting to slide underneath a car. Officer DiMichelle then observed several windows approximately twenty feet from Jordan. Charles Lazzaro, the owner of Lazzaro Glass Company, testified that the windows had been stored on the respective floors of the building for installation. No one had been given permission to take them out of the building. The independent circumstantial evidence presented at trial was sufficient to establish the *corpus delicti* of theft and to warrant the admission of Jordan's confession.

## III

Third, Jordan argues that since the windows were neither found in his auto nor in his physical possession, the State failed to prove he had control over the windows. Jordan's sole contention is that, absent his confession, the State failed to prove that he exerted unauthorized control over the windows with the intention of depriving the owner of their use. While it may be arguable whether the circumstantial evidence presented by the State would be sufficient alone to sustain the conviction, the fact remains that his confession was properly admitted at trial and amounts to substantial probative evidence of his guilt.

Jordan's statement reads in pertinent part:

Q. Tell us in your own owrds [sic] and to the best of your ability what happened?

A. On Monday July 14, 1980 at about 11:00 P.M. I went to take a woman home that lived in the senior Citizen's Building and there were two other men with me. We went to the woman's apartment, I think it was on the sixth (6th) floor. We stayed there about a half an hour. When we came out of the apartment, we saw some windows sitting by the elevator. The men asked me if they (the windows) would be of any value if we took them and I told them yea they would. So they put five windows on the elevator and I held the button so the elevator door wouldn't close. We went down to the first floor and I went out the front door and I think the other two guys took the windows out the back door. I went around to the corner of the building with my car and the two other guys were putting the windows up against the fence between the building and the parking lot. About this time, a police man came and the two other guys ran. The squad car drove up on the side of the fence that I was on and I had no where to run.

\* \* \* \* \* \*

Q. What part were you going to take in the theft?

A. I was going to transport the windows in my car for them.

Q. Where were you going to take the windows?

A. Whereever [sic] they wanted me to, we didn't discuss that.

Thus, Jordan clearly exerted unauthorized control over the windows, if only through the actions of his accomplices. Since the record clearly reveals substantial evidence of probative value in support of the verdict of the jury, Jordan's sufficiency argument must fail.

## IV

Two other issues were raised regarding the habitual offender finding but because of our disposition of the habitual offender matter, it is unnecessary to consider those issues as presented. The State points out a fundamental defect in the proof of sequence of the prior felonies supporting the habitual offender determination. This defect renders the evidence insufficient to support the habitual offender determination.

At the habitual offender proceeding, the State attempted to prove two prior felony convictions: the conviction for theft of over $100, and the conviction for burglary. On the theft conviction, the State presented evidence of the date of commission of the offense, February 27, 1972; the date of conviction, April 28, 1975; and the date of sentencing, April 28, 1975. On the burglary conviction, the State presented evidence solely of the date of sentencing, February 10, 1978. Thus, the record lacks evidence of the date of commission of the offense to which the burglary conviction relates.

To sustain a sentence under the habitual offender statute, the State must show that the defendant had been twice convicted and twice sentenced for felonies. The commission of the second offense must have been subsequent to the sentencing on the first offense, and the commission of the principal offense on which the enhanced punishment is being sought must be subsequent to the sentencing on the second conviction. *Steelman v. State* (1985), Ind., 486

N.E.2d 523, 526; Ind.Code Ann. § 35–50–2–8 (Burns Supp.1986). In *Steelman*, this Court *sua sponte* vacated an habitual offender determination on the ground that there was no evidence in the record of the date of the commission of the offense to which the second prior conviction alleged in the information related. The same problem presents itself here because the State documented Jordan's conviction through the commitment records of the Department of Correction and did not show when the offense was committed.

The State argues that since Jordan did not raise the issue on appeal, it has been waived. However, we view this as fundamental error as it renders the evidence insufficient to support the determination of habitual offender and hereby raise it *sua sponte*. *Steelman*, 486 N.E.2d at 526.

The conviction for theft, class D felony is affirmed; the habitual offender determination is vacated.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.