**Kenneth D. EVANS, Ricky L. Thomas, Appellants (Defendants Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–183A5.**

Court of Appeals of Indiana, Fourth District.

Nov. 15, 1983.

Rehearing Denied Dec. 8, 1983.

John Wissner, Scales, Wissner & Krantz, Boonville, for appellants.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

After a jury trial, defendants-appellants Kenneth D. Evans and Ricky L. Thomas were convicted of Theft. They appeal their convictions challenging the admission of their statements and the sufficiency of the evidence.

John W. St. Clair, who operated a road grader for Peabody Coal Company, was working the evening shift on December 1, 1981. At about 9:30 p.m., he was driving his road grader to a large fuel tank owned by Peabody and located on its property. As St. Clair approached the fuel tank he saw a rust colored van parked next to the tank. St. Clair pulled up behind the van and stopped. He did not see any individuals outside the van or any unusual activity. St. Clair sat there for a short period of time, and the van then drove off. As the van pulled away from the fuel tank, St. Clair saw a fuel hose fall to the ground. He was unable to say if the hose fell from the van or the tank. St. Clair followed the van a short distance until the van stopped and someone got out and stood by the van. About this time another employee of Peabody, Larry Randberger, came along. The van went back by St. Clair and Randberger and then turned around and went past them another time.

James Erwin, a foreman for Peabody, received a call from Randberger regarding the van. Erwin waited on a county road outside the mine until he observed the van drive by. He followed it to a residence in Lynnville. Erwin radioed the main office to have them call the police and then drove to Main Street to wait for the police. When the police officers arrived, they

talked with Erwin and then went to Evans' residence where the van was parked in the driveway. Defendants Evans and Thomas were standing next to the house pouring the contents of a fifty-five gallon drum into a hose that led into the house. The officers believed the defendants were pouring fuel oil from the drum into the hose; the officers did not know, however, whether the fuel oil in the drum was the same type as the fuel oil in the Peabody fuel tank. The officers observed that Thomas had mud and what appeared to be fuel oil on his shoes and that both Evans and Thomas had mud on their clothes. Although there was mud around the fuel tank, it had been wet and it was generally muddy. The officers were unable to say whether the mud came from the area around the fuel tank.

Upon questioning, Evans told Deputy Bob Irvin he had purchased the fuel oil at Heck's Texaco in Boonville from an older man with a limp. Thomas told Deputy Irvin he had arrived at Evans' house just before the police arrived. David Smith testified he was the only employee at Heck's Texaco who walked with a limp. He also testified he did not recall selling fuel oil on December 1, 1981 to Evans or anyone else who took it away from the station in a fifty-five gallon drum.

The Peabody fuel tank has a capacity of 10,000 gallons. The tank has a hose at each end, and the pumps are operated by a diesel engine. The pumps have gauges to monitor the amount of fuel being removed from the tank, which work when the diesel is operating. The engine that runs the pumps was not operating when St. Clair pulled up behind the van at the fuel tank. When the tank is sufficiently full, however, it is possible to take fuel oil from the tank without starting the pump because the tank will feed from gravity alone. There was testimony that on December 1, 1981 the fuel tank would gravity feed. The fuel tank does not have a gauge that indicates the volume of fuel in the tank. Neither Erwin nor any other witness could say for certain whether any fuel was taken from the tank. Erwin further testified that under the circumstances it would be difficult to determine whether any fuel had been stolen from the tank.

Evans and Thomas raise two issues on appeal; however, we find it necessary to consider only whether the evidence was sufficient to support their convictions. In reviewing the sufficiency of the evidence, we will determine only whether there is substantial evidence of probative value from which the trier of fact could reasonably find the defendant guilty beyond a reasonable doubt. *Hubbard v. State,* (1982) Ind., 437 N.E.2d 52, 55. Evans and Thomas contend the evidence was insufficient to prove any fuel oil was ever taken from the Peabody fuel tank. The State's witnesses testified they could not tell, and it was probably impossible to tell, whether any fuel was taken from the fuel tank. The question then becomes whether it is reasonable to infer that the fuel in the defendants' possession was taken from the tank. There is no evidence that the fuel oil in the possession of Evans and Thomas was even the same type as that in the fuel tank. We cannot infer the fuel was taken from the tank. The State has failed to prove that anything was taken. *See Dudley v. State,* (1960) 241 Ind. 201, 165 N.E.2d 380. Although the defendants may have had the opportunity to commit the crime charged, opportunity alone is not enough. *Id.* The State having failed to prove an essential element of the crime charged, we must reverse Evans' and Thomas' convictions.

Reversed.

CONOVER, P.J., and MILLER, J., concurs.